Gaston, J.
 

 The case made for the consideration of this Court, sets forth the evidence given on the trial, and the Judge’s instructions to the jury, with respect-to the application of that evidence to the decision of the issue, which they were impanjielled to try. It doesnot state any specific instructions prayed, or exceptions to those instructions taken, by either party, and we have therefore no other means of ascertaining whether the law was correctly administered, than by a comparison of the evidence with the instructions.
 

 With the positions of law laid down by his Honor, as abstract positions, no fault can be found. To enable the plaintiff to recover, because of a deceit, it was necessary to establish the existence of the alleged defect at the time of the sale, and a knowledge or belief of its existence on the part of the vendor, and even if these facts were established, the plaintiff could not recover, if he, at the time of his purchase, knew or
 
 *444
 
 had reason to believe that the defect existed. If he knew of the defect, or was cautioned against it, he was not deceived And if the vendor knew it
 
 not, or
 
 suspected it not, he was not gU-jjfy 0f imposition.
 

 We hold too, that the judge was warranted in instructing the jury, that, if the defect in question existed at the time of the. purchase, there was
 
 no evidence
 
 that the purchaser then, knew or had been informed of this defect. It was indeed possible, that he might have acquired such information in his •private conference with the negro woman, or from communications from her husband. Bnt where the law does not presume the existence of a fact, there must be proof, direct or indirect, before the jury can rightfully find it; and although the boundary, between a defect of evidence and evidence confessedly slight, be not easily drawn in practice, yet it cannot be doubted that what raises but a possibility or conjecture of a fact, never can amount to legal evidence of it. Our difficully, however, lies in
 
 this,
 
 that while the jury were explicitly instructed, that upon the testimony given in, there was no evidence, upon which they could infer that the plaintiff was apprized of the defect at the time of his purchase,
 
 it
 
 was
 
 left to
 
 them, as a question depending upon the weight of evidence, whether the defendant had or had not knowledge thereof before he sold. We have carefully examined all the testimony stated, and we are unable to lay our hands upon any part of it, which can fairly warrant the inference of such knowledge, or furnishes more than the materials for a mere guess or conjecture thereon. It was indeed for the jury to determine, whether to rely on the judgment of the medical gentleman, who was of opinion that the disease had been of many years duration, or on that of the other learned gentlemen, who pronounced that it could not have pre-existed the woman’s pregnancy.' — ■ On this point, there was evidence on both sides, and it was for the triers of the fact to compare and weigh this evidence. But admitting the existence of the disease previously to the sale, what proof was there, direct or inferential, that the defendant knew of it or suspected it ? Not one sympton of the disease is shewn to have occurred, while the woman
 
 *445
 
 was in his possession, which could have indicated its existence, even to the members of the medical profession. “The symptons were not distinguishable,” (such are the words of the doctor who attended the poor woman in her last delivery) “ from the symptons of ordinary pregnancy.” How, then, from any of these symptons could it be inferred, that any person, either the sufferer herself or her master, had discovered the latent disease? Even the materials for a
 
 guess
 
 or
 
 conjecture
 
 were not furnished by the occasional attacks of faintness, which she had
 
 while in a state of
 
 pregnancy, and no other indications of a want of health at any other time than during pregnancy, are alleged to have existed. But she had borne two children since the one, then four years old, which was sold with her, and these had either been born dead or had died a short time after their birth, and the seller made no communication to the purchaser in relation to these occurrences. Now, in the first place, it was left wholly uncertain by the testimony,
 
 how the fact was,
 
 whether these children were born dead, or had died soon after their birth. In the next place, there was no testimony, that however the fact might be,
 
 quacicmqtie via
 
 data, it furnished a rational ground to suspect that the mother labored under this disease. And, lastly, the purchaser, when he bought the mother and her youngest child, then
 
 four
 
 years old, was necessarily apprized that either she had ceased to breed, or had been unfortunate with her subsequent children. What might be the cause of this interruption in the increase of issue, according to the ordinary course of nature, was a fair subject of conjecture with both, and not more a matter of knowledge with one than the other. The remaining circumstance is, that the defendant sold the woman, though the only other female slave he owned was but 14 years of age. Before any inference of an unfair motive for making the sale could thence be deduced, there ought at least to have been some evidence of the situation of the defendant or his family, or of the peculiar qualities of this negro woman, repelling or tending to repel the ordinary presumption of fairness, which is always drawn by the law, until there be proof to the contrary.
 

 
 *446
 
 We feel ourselves constrained to hold, that there was error in leaving it to the jury to infer from the testimony a fraudulent intent in the defendant, when no evidence had been given from which such an intent could be inferred.
 

 Per Curiam, Judgment reversed, and new trial awarded.