It was in evidence for the plaintiffs, that they were creditors of Shepperd Wycoff, to the amount of about $1,000; and that they sent their agent with an attachment to levy on the stock of goods; that the agent went to the store of Sheppard Wycoff, accompanied by a deputy sheriff; found Shepperd in possession, and told him of their judgment and attachment, and of his intention to levy the attachment on the goods, but added, that if a satisfactory arrangement could be made, he would not levy. Shepperd expressed a desire to make an arrangement and prevent the levy. The agent then proposed to buy the stock of goods, or so much thereof, as might be necessary in payment of the debt. To this Shepperd assented, provided, they could agree on the price.
The agent, as a witness for plaintiffs, stated that he then offered Shepperd for the goods, what they cost. Shepperd refused, (452) demanding an advance on prime cost, of ten per cent or more, which he refused to give. That they then commenced inventorying the goods, he, the agent, putting down the cost of each article; that they had proceeded but a little way in this, when Shepperd became angry, and said he could not stand such prices, when they stopped the inventory; and he and Shepperd agreed to box up all the goods without an inventory, and haul them to Troutman's depot, on the A. T. O. R. R., next morning, which was Thursday; that on the next Monday, Shepperd was to go down with the goods to Charlotte, and there agree on the price with Wittkowsky; and if they agreed, the debt of the plaintiffs was first to be paid out of the price, and the remainder paid over to Shepperd for the benefit of his other creditors in Charlotte. *Page 357 
That they accordingly boxed up the goods, and they were hauled to the depot, where the depot agent was told that the goods were to go to the plaintiffs, in Charlotte, and that Shepperd was to go down with them, on Monday. That at the store of Shepperd Wycoff, with the assent of Shepperd, he, the said agent, sold a small lot of guano and a pair of counter-scales to the depot agent, and received the money for those things.
It was admitted by the defendant, that he had seized the goods at the depot, on Monday night after they were taken there; and he showed several executions and judgments against Shepperd Wycoff, in favor of various parties under which he had seized them. One of the judgments and executions being in favor of the plaintiffs on the same debt, for which they allege they had bought the goods, the said judgment being for the full amount of the debt, with no credit entered for said goods, and bearing date after the time of the alleged purchase of the goods by their agent.
It was also in evidence for the defendant, that at the time he made the said levies on Monday night, Wittkowsky, one of the plaintiffs' was present, urging defendant to levy this execution of his firm, on the goods along with his other executions; and that he then set up no claim to the goods; that the sheriff levied the plaintiffs' said execution on the goods, as the property of Shepperd Wycoff, (453) having no notice of plaintiffs' claim as purchasers. That several days after the levy, the plaintiffs served a notice on defendant, that when he sold said goods under the said executions, they claimed that he should apply "it pro rata part" of the proceeds to their execution.
The defendant had no notice that plaintiffs claimed said goods by any purchase from Shepperd Wycoff, or either of them, until the service of the process in this case upon him, which was a short time before the sale under the executions. That Wittkowsky, after the levies on Monday night, had complained, that if his agent had levied his attachment, as he directed him to do, it would have prevented all the trouble.
Wittkowsky, and another for him, testified that on the said Monday night, when the levies were made, he first offered his executions to the defendant and demanded that he should levy them on the goods; that when the defendant refused to do so, until he had first levied the executions which he had already in his hands, he, Wittkowsky, then claimed the goods as his own, and forbid the defendant's levying thereon; that after defendant had levied his other executions, he again offered him his executions and demanded a levy; that defendant took the executions, levied them, dating the levy six minutes after those of the other executions. *Page 358 
Defendant offered to prove by Shepperd, that on Saturday morning after the goods had been carried to the depot the evening previous, he, Shepperd, went to the depot, and ordered the Railroad agent not to send the goods to Charlotte, but to hold them up at the depot. To this evidence, the plaintiffs objected. His Honor admitted it, and the plaintiffs excepted.
Under the instructions of his Honor, the jury returned a verdict for the defendant. Judgment accordingly, and appeal by the plaintiffs.
As the Judge instructed the jury to find a verdict for the defendant, he must be taken to have decided that there was no evidence of a sale of the goods to the plaintiff. Where there is any evidence to support a plaintiff's claim, it is the duty of the Judge to submit the question to a jury, who are the exclusive judges of its weight. This doctrine must have been a part of the law from the earliest times at which the respective functions of the Judge and jury were discriminated. The earliest distinct expression of it that I know of was by BULLER, J., in Company of Carpenters, etc., 1 Doug. 375. "Where there be any evidence is a question for the Judge. Whether sufficient evidence is for the jury."
Since then it has been repeated innumerable times. Of course, after a while it became a question as to what was the meaning of the phrase, "any
evidence." Did it mean the slightest scintilla of evidence, or such only as that from which a jury might reasonably infer the existence of the alleged fact. The latter view has been adopted in this State and in England, and so far as my researches have extended, in other States generally. This was the view taken by this Court in State v. Vinson, 63 N.C. 335, upon the authorities there cited. In addition to those are the following cases in this State, which speak an uniform language: Jordan v. Lassiter,51 N.C. 130; State v. Revels, 44 N.C. 200; Sutton v. Madre,47 N.C. 320; Cobb v. Fogleman, 23 N.C. 440.
There is a recent case in the English Court of Exchequer Chamber, which puts the doctrine so clearly as to excuse a quotation. The question in that case was, whether certain articles which had been sold to an infant were necessaries. WILLES, J., says: "There is in every case a preliminary question which is one of law, viz.: whether there is any evidence on which the jury could properly find the question for the party on whom the onus of proof lies. If there is not, the Judge ought to withdraw the question from the jury and direct a non-suit if the *Page 359 onus is on the plaintiff, or direct a verdict for the plaintiff if the onus
is on the defendant. It was formerly considered necessary in all cases to leave the question to the jury if there was any evidence (455) even a scintilla, in support of the case; but it is now settled that the question for the Judge (subject, of course, to review,) is, as stated by MAULE, J., in Jewell v. Parr, 13 C. B., 916; 76 E. C. L. R., not whether there is literally no evidence, but whether there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established. In Toomey v. London and Brighton R. W. Co., 3 C. B. N. S., 150, (91 E. C. L. R.,) WILLIAMS, J., enunciates the same idea thus: "It is not enough to say that there was some evidence — a scintilla of evidence clearly would not justify the Judge in leaving the case to the jury. There must be evidence on which they might reasonably and properly conclude that there was negligence" — the fact in that case to be established. And in Wheelton v. Hardisty, 8 E. B., 262, (92 E. C. L. R.,) in the considered judgment of the majority of the Court, it is said: "The question is, whether the proof was such that the jury would reasonably come to the conclusion that the issue was proved?" This, "they say," is now settled to be the real question in such cases by the decisions in the Exchequer Chamber, which have, in our opinion, so properly put an end to what had been treated as the rule, that a case must go to the jury if there were what had been termed a scintilla of evidence." Ryder v. Wombwell, (1868) L. R. 4 Exch., 32. By thus quoting from recent English cases we do not mean to extend or alter any rule of practice or evidence heretofore recognized in this State. The great importance of this understanding of the phrase, "any evidence," will be seen by considering it as it may be applied in criminal actions.
The question then is, was there any evidence in this case of a sale of the goods in question to the plaintiffs. A sale is defined by Benjamin as "a transfer of the absolute or general property in a thing for a price in money." To the completion of this contract, as of all others, there must be the mutual assent of the parties to its terms. Such mutual assent cannot exist unless the terms are definite. The thing (456) sold must be ascertained. Until the specific thing is agreed on, the agreement can only be executory. Benjamin on Sales, 227-8.
And for a like reason, the price to be paid must also be certain, or some guide must be agreed on by which it can be found with certainty. There may be a sale for a reasonable price, in which case, if the party afterwards differ, the price must be made certain by the verdict of a jury. Or there may be a sale at a price to be afterwards fixed by valuers. In such case, if the valuers refuse to fix the price, the sale is considered incomplete or else as rescinded by the refusal. If, indeed, *Page 360 
the thing sold has been delivered to the vendee and consumed, so that the parties cannot be put in statu quo, the vendee is liable for a reasonable price. Benjamin on Sales, 69; Clarke v. Westroppe, 18 C. B., 765. But there cannot be an executed sale so as to pass the property where the price is to be fixed by agreement between the parties afterwards, and the parties do not afterwards agree. One element of a sale is wanting, just as a different element would be if the thing were not ascertained. If in such case the thing was actually delivered and consumed, the vendee would be liable, not upon the special imperfect contract, but on an implied contract to pay a reasonable price. In Devane v. Fennell, 24 N.C. 36, it is said that if upon a contract for the sale of goods anything remains to be done by the vendor to ascertain the price, etc., the sale is incomplete, and if the actual possession has been delivered to the vendee, it is still constructively in the vendor.
To apply these principles to the evidence for the plaintiffs in the present case: The plaintiffs being creditors of Wycoff Shepperd, sued out an attachment against them, and sent a deputy sheriff and another person as their agent, to the store of Wycoff Shepperd. The attachment was not levied and no claim is set up on that account. The agent proposed to take the goods in question, or as much of them as might be required for the purpose, in payment of the plaintiffs' debt, but he and Shepperd did not agree upon the price. Thereupon, as the case (457) states the testimony of the agent, who was a witness for plaintiffs, "the agent and Shepperd agreed to box up all the goods without an inventory, haul them to Troutman's depot on the A., T. O. R. R., next morning, which was Thursday; that on the next Monday Shepperd was to go down with the goods to Charlotte and agree on the price with Wittowsky, and if they agreed, the debt to plaintiffs was first to be paid out of the price and the remainder paid over to Shepperd," etc.
The goods were accordingly hauled to the depot and the agent of the Railroad Company was told that they were to go to plaintiffs at Charlotte, and that Shepperd was to go with them. The plaintiff's agent, with the consent of Shepperd, sold some guano and a set of counter scales which were at the store, and before the goods were carried to the depot, and received the price. The goods were not sent to Charlotte, but remained at the depot; no price was afterwards agreed on between plaintiffs and Shepperd, and on Monday night they were levied on by the defendant as sheriff.
In all the transaction, we think there is no evidence of an executed sale; nothing from which it could be reasonably or fairly inferred that it was the intent of the parties to it to transfer the absolute property in the goods to the plaintiffs. *Page 361 
There may be a doubt as to who had actual possession and control of the goods while at the depot, whether the plaintiffs or Shepperd. That question is not assumed either way, and no stress is put on it. But if the goods had happened to have been burned at the depot and Wycoff Shepperd had sued the plaintiffs for the price as on an executed sale, by what rule would the price have been ascertained? Not by any furnished by the contract between the parties, which shows that the contract was incomplete.
PER CURIAM. Judgment affirmed.