The prisoners were indicted for murder, the bill charging that they "willfully, premeditatedly, deliberately, and feloniously, and of their malice aforethought, did kill and murder Phillip L. Phillips."
There was evidence, which the jury believed, that the prisoners lay in wait and killed the deceased from ambush. There was no evidence tending to show any other state of facts, and the sole issue of fact was as to the identity of the prisoners, that is, whether they were the persons who slew the deceased. The jury returned for their verdict that they found "the prisoners at the bar, and both of them, guilty of the murder and felony whereof they stand indicted." *Page 896 
The court had refused to charge the jury, as prayed by the prisoners, that "under the evidence of this case they could return a verdict of guilty of murder in the first degree, or guilty of murder in the second (815) degree, or not guilty." The court properly refused to so charge, for if the jury were satisfied beyond a reasonable doubt that the prisoners slew the deceased in the manner in evidence, they were guilty of murder in the first degree; and if it was not found beyond a reasonable doubt that the deceased was thus slain by the prisoners, then, as the court instructed, the jury should have returned a verdict of not guilty.
The jury found that beyond a reasonable doubt the prisoners slew the deceased, and found them guilty as charged in the indictment.
The deceased was shot about 7:30 a. m., 23 August, 1915, and died about 7 p. m. of the same day.
The evidence is that the deceased left home at 7:20 a. m. that day, riding a mule down the road towards Robbinsville. His son and daughter soon after went to the cow lot to milk, when they heard a gun fire and heard their father call twice quickly. The son got one Buck Campbell to go with them, and, going down the road, found their father sitting with his back against a tree and the mule hitched to the tree. This was about three-fourths of a mile from the place where the deceased said he had been shot, and the tracks of the mule showed that it commenced running at that point. The son asked his father the trouble, and he said that Hardy Wiggins or Merritt Miller had shot him at Hazel Branch, near a big chestnut log; that he saw them as he passed there. When asked if he wanted a doctor, he said, "There is no use." Just at that time the prisoner, Merritt Miller, came up, when the deceased said: "You are the man that shot me." Miller denied this, and the witness says: "Miller was in a trembling way and could not hold his hands still when he walked up to where (witness's) father was. This took place right when Miller walked up."
After the arrival of other people, the deceased was carried home on a stretcher, and in passing the chestnut log he showed them where the two men were when he had passed. He said that one of the men shot after he passed them, the bullet entering about 2 inches to the right of the backbone and coming out at the breast. There was testimony of ill-feeling on the part of the prisoners towards the deceased, and threats by each of them that they would kill him. When the deceased stated that the prisoner shot him, and pointed out where he stood, he said that he would die, and he did die that evening. The judge properly admitted his statements as dying declarations.
Boodhounds [Bloodhounds] were brought from Tennesee [Tennessee], and after being put on the tracks, which had been carefully guarded, around the chestnut log, they trailed until they came to the home of the prisoner Wiggins and *Page 897 
marked him while he stood in the yard. They then followed the track and met the deputy sheriff, who had Miller in custody, whereupon the dogs that were trailing the track ran up to Miller and marked him also. (816)
Exceptions 2, 3, 6, 7, 8, 9, 12, 13, 14, 21, 24, 25, 26, 29, 30, 31, 32, and 33 are not mentioned in the brief of the appellants, and are therefore waived. Rule 34; S. v. Spivey, 151 N.C. 676.
Exception 1 is because on objection by the State the court excluded the evidence offered to show that two other men were seen the evening before near the spot where deceased was shot. Testimony tending to show that another than the prisoners committed the crime is inadmissible unless there is direct evidence connecting the other with the corpus delecti, which was not the case here. S. v. Millican, 158 N.C. 621; S. v. Lambert, 93 N.C. 623;S. v. Beverly, 88 N.C. 633; S. v. Baxter, 82 N.C. 604; S. v.Bishop, 73 N.C. 45; S. v. White, 68 N.C. 159.
A witness for the State was asked on cross-examination, for the purpose of impeaching him, if he had not been accused of stealing a certain person's hogs. On objection, this was properly excluded. The question was not whether he had been convicted, but whether he had been accused, and it is certainly not competent to ask a question foreign to the issue in order to impugn the credit of the witness. It is not stated what the witness's answer would have been. Carr v. Smith, 129 N.C. 232; S. v. Glisson,93 N.C. 508.
Exceptions 5, 10, 11, 15, 16, 17, 18, 19, 20, 22, 23, 27, and 28 relate to the admission of testimony as to the trailing of the prisoners by bloodhounds. This testimony has always been held competent within the limits observed in this case. S. v. Norman, 153, N.C. 591; S. v. Spivey,151 N.C. 676; S. v. Freeman, 146 N.C. 615; S. v. Hunter, 143 N.C. 607;S. v. Moore, 129 N.C. 494, and Chamberlayne on Evidence, sec. 1760.
In S. v. Norman, 153 N.C. 591, the Court held that in order to render such testimony competent it must not only be shown that the dog is of pure blood and of a stock characterized by acuteness of sense and power of discrimination, but must also be itself possessed of these qualities and have been trained or tested in their exercise in the tracking of human beings. The testimony of the owner and trainer of the dogs fully measured up to these requirements, and need not be discussed.
This having been shown to the satisfaction of the court, the evidence of their action in trailing was properly submitted to the jury. Whether they properly tracked the prisoners and identified them was for the jury, unless the evidence was manifestly insufficient to be submitted to them. In S. v.Moore, 129 N.C. 494, relied upon by the prisoners, the dog failed to follow any track. The evidence of the trailing in this case is *Page 898 
very full and the jury found it sufficient. It was used in corroboration of the dying declarations of the deceased. The criticisms of the counsel for prisoners here were directed to the weight to be given this testimony, but that was a matter for the jury, and not a question of law for this Court.
(817) The last exception is to the form of the verdict rendered, upon the ground that the statute requires the jury to say in what degree of murder the prisoners were convicted. The statute, Revisal, 3271, provides: "Nothing contained in this statute dividing murder into degrees shall be construed to require any alteration or modification of the existing form of indictment for murder, but the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree." The object of this statute is, of course, to place it beyond doubt in what degree of murder the prisoner was convicted. The verdict must be construed according to the charge and the evidence, and when these make it certain beyond question, the law has been complied with. S. v. Gilchrist, 113 N.C. 673.
In this case the court instructed the jury that they should find the prisoners "either guilty of murder in the first degree or not guilty." The testimony was that the prisoners waylaid the deceased, and the only defense was an alibi. Upon the evidence for the State, and that for the defense, and the charge, the jury had no alternative but to return a verdict of guilty of murder in the first degree, as charged, or not guilty. Under these circumstances this Court has always sustained a verdict like this.
In S. v. Spivey, 151 N.C. 676, the Court held: "When the entire evidence shows, and no other reasonable inference can be fairly drawn therefrom, that the murder was committed either by lying in wait or in an attempt to perpetrate a felony, and the controverted question is the identity of prisoner as the murderer, the trial judge does not commit error in charging the jury to render a verdict of guilty of murder in the first degree or not guilty."
Under this charge, and upon this evidence, the jury had no alternative but to find the prisoners guilty of murder in the first degree or not guilty. If there had been the slightest doubt possible, the prisoners' counsel should, and certainly would, have asked for the jury to be polled and to indicate in what degree of murder each juror found the prisoners, and each of them, guilty. It would be trifling with the most solemn administration of justice to hold that on a trial, especially of this kind, in which every point has been defended, there was any doubt on this charge and evidence as to the finding of the jury.
In S. v. Gilchrist, 113 N.C. 673, where the indictment was in the same form as this, and the court charged that the crime was murder or *Page 899 
nothing (as it did in this case), and the jury found the accused guilty of the felony of murder in the manner and form as charged in the bill of indictment (as it did here), the Court held that upon the evidence only a verdict in the first degree was warranted, and that the general verdict was in response to the charge of murder in the first degree and a full compliance with the above statute, the Court saying (citing (818) several cases): "The verdict should be taken in connection with the charge of his Honor and the evidence in the case." This has been cited repeatedly since, see Anno. Ed., especially S. v. May,132 N.C. 1021, and the very recent case of S. v. Walker, 170 N.C. 716.
In this last case the foreman responded, "Guilty of murder in the first degree," and the prisoners having called for a poll of the jury, each juror responded simply, "Guilty." The Court held that in that case (as in this) the question being solely as to the identity of the prisoners, and the judge having properly charged the jury upon the evidence to return a verdict of guilty in the first degree or not guilty, the verdict must be construed in connection with the charge and the evidence, and there could be no reasonable intendment that the verdict could have meant anything else than murder in the first degree, "for there was no evidence either of murder in the second degree or of manslaughter, as indeed the court had told them," adding: "Any other interpretation would be a `refinement' and a miscarriage of justice."
The prisoners rely upon S. v. Truesdale, 125 N.C. 696, and S. v.Jefferson, 1b., 712. In the former case the record shows that there was question on the trial upon the evidence as to the degree of murder of which the prisoner was guilty, and the jury should have specified the degree. In the latter case a new trial was granted upon the incompetency of the evidence of dying declarations and of the other evidence, the Court adding that the verdict should have specified also of what degree of murder the prisoner was guilty.
In this case the entire evidence and charge and trial were directed to the one question as to the identity of the prisoners with the murderer, and the verdict can be construed, reasonably, in no other light than in answer to that issue.
No error.
Cited: S. v. McIver, 176 N.C. 719 (3c); S. v. Bryant, 180 N.C. 692 (5c);S. v. Robinson, 181 N.C. 518 (3c); S. v. Maslin, 195 N.C. 541 2d; S. v.McLeod, 196 N.C. 545 (3c); S. v. Dalton, 197 N.C. 126 2d; S. v. Smith,201 N.C. 497 (5c); S. v. Mozingo, 207 N.C. 248 (5p); S. v. Morris,215 N.C. 554, 555 (c); S. v. Mays, 225 N.C. 489 (5p). *Page 900