## STATE v. SANDY McIVER.

(Filed 2 October, 1918.)

1. Criminal Law—Evidence—Bloodhounds.

The action of bloodhounds may be received in evidence when it is shown that they have been accustomed to pursue the human track, have been found by experience reliable in such cases, and that in the particular instance they were put on the trail of the accused and pursued and followed it under such circumstances and in such a way as to afford substantial assurance or permit a reasonable inference of identification.

STATE v. McIVER.

**2. Same—Footprints—Identification.**

Evidence that trained and experienced bloodhounds had been put on the trail of the accused at the place he had been at work during the day; that they followed his tracks down the road a mile, passing other dwellings to his own, where he was found; that he protested his innocence without accusation; that the energy of the hounds then became passive or content, one of them placing its paw on overalls he admitted he had been wearing, and that there were particular marks on the bottom of the shoes of the accused which corresponded with the tracks which had been followed, both as to the markings and size and shape, is sufficient to be submitted to the jury upon the question of his guilt.

**3. Appeal and Error—Evidence—Prejudicial Error—Harmless Error.**

An unresponsive answer by a witness to a question, which could not have had appreciable significance on the result of the trial, will not be held reversible error on appeal.

ACTION tried before *Daniels, J.,* and a jury, at July Term, 1918, of LEE.

The indictment, under section 3334 of Revisal, charged defendant with being in the dwelling-house of Mrs. J. A. McPhail, in said county, on the night of 24 June, 1918, with intent to commit a felony or other infamous crime therein.

Verdict of guilty. Judgment, and defendant excepted and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*E. L. Gavin for defendant.*

HOKE, J. It was chiefly objected to the validity of the trial that his Honor refused to strike out the evidence tending to show that bloodhounds had tracked the accused; and, second, his refusal to nonsuit on the entire evidence; but we are of opinion that neither position can be sustained.

It is fully recognized in this jurisdiction that the action of bloodhounds may be received in evidence when it is shown that they have been accustomed and trained to pursue the human track—have been found, by experience, reliable in such cases; and, further, that in the particular instance they were put on the trail of the guilty party and have pursued and followed it under such circumstances and in such a way as to afford substantial assurance or permit a reasonable inference of identification. Decisions in illustration of the principle and the proper limitations upon it will be found in *S. v. Wiggins,* 171 N. C., 814; *S. v. Norman,* 153 N. C., 591; *S. v. Freeman,* 146 N. C., 616; *S. v. Spivy,* 151 N. C., 676; *S. v. Hunter,* 143 N. C., 607; *S. v. Moore,* 129 N. C., 501; *Hargrave v. State,* 147 Ala., 97; *Parker v. State,* 46 Tex. Ct. App., 461; *S. v. Dickinson,* 77 Ohio State, 34. A very full and satisfactory statement of the

position will be found in this last case, as follows: "In order to make competent evidence of the conduct of bloodhounds in trailing or following the tracks of one accused of crime, it is necessary that a preliminary foundation be laid therefor, by showing by some one or more having personal knowledge of the facts that the particular dog so used had been trained and tested in trailing human beings, and by experience had been found reliable in such cases, and that the dog so trained and tested was, in the instance involved, laid on the trail, whether it was visible or invisible, at a point where the circumstances tended to show that the guilty party had been, or upon a track which the circumstances indicated to have been made by him."

And in *S. v. Freeman, supra,* speaking to this kind of evidence and its proper reception, the Court said: "Where the training, character, and conduct of the dog make his acts evidence, such acts may be either a circumstance or corroborating evidence. Their admission as evidence is not restricted to cases in which the dog's acts are corroborative only. It is sufficient if the evidence of the conduct of the dog, taken with other facts and circumstances in evidence, should be enough to authorize a verdict."

Considering the facts as they appear of record, these and other cases of like purport are in full support of his Honor's rulings. The evidence on the part of the State tended to show that on the night of 24 June Mrs. McPhail and her daughters and her little son had been sitting in the dining-room, and one of the daughters got up to go into a bedroom, the latter opening into the sitting-room and having also an opening into a screened outside porch, the latter opening into the yard; that when she entered the bedroom some one was under the bed; he jumped out and made a grab at the witness; that she eluded him and ran out in the dining-room and screamed, and the person fled. The others joined in the alarm. Soon a neighbor and others came in. That defendant lived about a mile down the road from Mrs. McPhail and had been there a short while before the occurrence, doing work on their porch; that between 1 and 2 o'clock the dogs were brought, "put on the trail under the bed," and when they came out they went out the doorway on to the screen porch, right across the yard and out into the old road; followed down the road a mile or a little over; passed several houses, and finally went up to defendant's house, and as they went up, the defendant, standing on the porch, said: "I'm not the man"; this before any statement or accusation had been made; that the dogs went into the house and up to some overalls and also a pair of low-quartered shoes that were not far away. The defendant admitted having had on the overalls that day, but said he had not had the shoes on since the Sunday before. Speaking to the kind and character of the dogs and their conduct in following the

trail, the owner who had them in charge said: "They were registered, thoroughbred bloodhounds. One he had owned three years and a half, and one a year; that they were trained to run human beings; had had a good deal of experience with them, and they were trained when he got them; that he had made from three to ten trips a month with them, and they had proved thoroughly reliable." The witness said he could not look for tracks at first, the crowd being around, but when he got away from the house 300 or 400 yards and along the trail the dogs were following, he saw tracks, examined them carefully, and they corresponded in size with the tracks of the shoes, and one of them gave indication of a hole in the center of the wearer's shoe and a peculiar wearing-off of the left heel, and both of them corresponded with the marks of defendant's shoes.

It was also shown in evidence that the shoes which defendant said he had not worn since Sunday gave every indication that they were still damp from recent wearing. There was proof also of tracks along the road, 50 yards of the house and going towards it, that corresponded in size with defendant's shoes. In reference to the conduct of the dogs in following the track, another witness, George Temple, testified, among other things, as follows:

Q. "With respect to the tracks you spoke of, coming near the house, where did the dogs trail?"

A. "They came out of the back door of the room on to the porch and 'round the house, and went to where the tracks were—trailed just as if they wanted to eat something, until they got to Sandy's house. They almost broke Mr. Cockman down, pulling him so hard. When they got to Sandy's house, they quieted right down. There were some overalls lying on the floor, and Sandy said: 'They are mine. I have been wearing them all day.' The female dog put her paw on them just as contented as if she had caught a rabbit."

Whatever misgivings may at times exist as to the admission of this kind of evidence, there would seem to be none in the present instance; and the action of the dogs, with the other facts and circumstances tending to fix the guilt upon defendant, are, in our opinion, sufficient to support his Honor's rulings and justify the verdict of the jury.

It was also objected that one of the daughters of Mrs. McPhail, in closing her evidence-in-chief, had stated that one of her sisters had been "off canvassing for War Savings Stamps, about a mile away. I think she went in the community where Sandy lives." This was a voluntary statement of the witness, not called for by any question. It had already appeared in evidence, and without objection, that the sister had been so engaged, and the statement would seem to be without appreciable significance on the results of the trial—assuredly so, in the absence of any testi-

46—176

mony tending to·show that her occupation was known to defendant.    In no event could it be held for reversible error.    We find no error in the record, and the judgment must be affirmed.
·  No error.