## STATE v. WILBUR McLEOD.

(Filed 23 January, 1929.)

1. **Homicide — Evidence — Weight and Sufficiency — Nonsuit — Circumstantial Evidence.**

Evidence tending to show that the deceased was ravished by a person suffering from gonorrhea, and that she died from the assault and choking, with further evidence that the defendant had the disease and that his shoes fitted the tracks made at the time of the crime around the house of the deceased and at the place of the crime, is sufficient, taken with other evidence of guilt, to be submitted to the jury and to sustain their verdict thereon of murder in the first degree. C. S., 4643.

2. **Criminal Law—Evidence—Circumstantial Evidence.**

Circumstantial evidence is a recognized and accepted instrumentality in the ascertainment of truth upon the trial of a criminal offense.

3. **Criminal Law—Trial—Nonsuit—Evidence.**

Upon motion to dismiss under C. S., 4643, it is required that the court ascertain merely whether there is any sufficient evidence to sustain the allegations of the indictment and not whether it be true nor whether the jury should believe it.

4. **Criminal Law—Evidence—Bloodhounds.**

The action of bloodhounds may be received in evidence only when it is properly shown that they are of pure blood, that they possess the powers of acute scent and discrimination between scents, that they have been accustomed and trained to pursue the human track; that they have been found by experience to be reliable in pursuit, and that in the particular case they followed the trail of the guilty party in such way as to afford substantial assurance, or permit a reasonable inference of identification, and where this last element is lacking the admission of evidence of their actions over defendant's objection is reversible error warranting a new trial.

5. **Criminal Law—Appeal and Error—Review—Harmless Error.**

Upon appeal the immateriality of error must clearly appear upon the face of the record for the Supreme Court to find it harmless.

BROGDEN, J., dissenting.

APPEAL by defendant from *Nunn, J.,* at May Term, 1928, of LEE.

Criminal prosecution tried upon an indictment in which it is charged that the prisoner, Wilbur McLeod, did on 28 March, 1928, unlawfully, wilfully and feloniously of his malice aforethought kill and murder one Rebecca Matthews.

The evidence on behalf of the State tends to show that in the early morning of 28 March, 1928, about 2 a.m., Mrs. Rebecca Matthews was found dead in a field approximately thirty yards from her house. She

had been ravished by some one suffering from gonorrhea, such as the defendant had. Her death was caused by the assault, shock and choking. She was 77 years of age, and quite feeble. The prisoner's shoes fit the tracks seen near the house and leading from where the body of the deceased was discovered.

On this phase of the case E. L. Cobert, night policeman at Sanford, testified in part as follows: "I measured seven tracks on the ground where it left the house. I only measured three of the tracks across the field—ten altogether. I actually measured with a rule. Some of the tracks indicated the man was running, and some indicated that he was walking. Tracks where the toe made a deeper imprint and the distance between the tracks caused me to say he was running. I measured both the running and the walking tracks, and they measured identically the same. Two and a quarter inches from the heel to the half sole on one shoe and two inches from the heel to the half sole on the other shoe, and the measurement on the ground was identically the same as the measurement of the (prisoner's) shoes."

Soon after it was known that the deceased had been murdered, English bloodhounds ("Cockman" dogs), trained and accustomed to pursuing the human track, and found by experience reliable in such pursuit, were put upon the track of the person who had apparently committed the homicide.

W. C. York, owner of the dogs, testified, in substance, as follows: The dogs followed the trail from the body of the deceased down by a fence, across a field into a patch of woods, then out of the woods over a fence into a little woods road, which led to the hard-surfaced road going towards Broadway. *The dogs passed by the road which runs from near a filling station across the railroad in the direction of the defendant's home,* went down the railroad two or three miles, then left the railroad, circled back into the highway, and came to near the filling station where the road, previously crossed, branches off in the direction of defendant's home. No tracks could be seen here, but the dogs pulled to the right, crossed the railroad, came over a kind of hollow, branch or marsh, and stopped within twenty or thirty feet of William McLeod's house, where the defendant, his father and mother, and several small children were living. The dogs went no nearer; they saw the defendant when he came out of the house; they did not bay or indicate the defendant in any way.

Q. "If you were to carry your dogs up to within twenty or thirty feet of anybody's house, and they were to stop and lay down, what indication would that be to you that they had tracked any certain person?" A. "None whatever."

Q. "Then if there were more than one person in the house of William McLeod on the night these dogs stopped in twenty or thirty feet, there was no indication from your dogs that they had tracked any particular person?" A. "No, sir."

The prisoner moved to strike out the testimony of the witness York relative to the action of the bloodhounds. Overruled and exception.

The defendant was carried down the road from his house and requested to place his shoes in two or three different tracks. The statement was made by some one that the shoes did not fit the tracks; whereupon the defendant was allowed to go back home. He was later arrested and charged with the murder of the deceased.

Two other persons were arrested as suspects, one affected with a venereal disease, the other not, but the shoes of neither fitted the tracks in question; hence they were released.

Motion by the prisoner for judgment as in case of nonsuit. Overruled and exception.

Verdict: Guilty of murder in the first degree.

Sentence: Death by electrocution.

The prisoner appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Young & Young for defendant.*

STACY, C. J., after stating the case: The prisoner stressfully contends that his motion for judgment of nonsuit, made first at the close of the State's evidence and renewed at the close of all the evidence, should have been allowed, but we are of opinion that the case is one calling for a jury verdict. The motion to dismiss under C. S., 4643, requires that the court ascertain merely whether there is any evidence to sustain the allegations of the indictment, and not whether it be true or the jury should believe it. *S. v. Lawrence, post,* 562.

True, the evidence is circumstantial, but circumstantial evidence is a recognized and accepted instrumentality in the ascertainment of truth. *S. v. Plyler,* 153 N. C., 630, 69 S. E., 269.

Speaking to the subject in *S. v. White,* 89 N. C., 462, *Merrimon, J.,* delivering the opinion of the Court, said:

"It is well settled law that the court must decide what is evidence, and whether there is any evidence to be submitted to the jury, pertinent to an issue submitted to them. It is as well settled that if there is evidence to be submitted, the jury must determine its weight and effect. This, however, does not imply that the court must submit a *scintilla*—very slight evidence; on the contrary, it must be such as, in the judgment of the

court, would reasonably warrant the jury in finding a verdict upon the issue submitted, affirmatively or negatively, accordingly as they might view it in one light or another, and give it more or less weight, or none at all. In a case like the present one, the evidence ought to be such as, if the whole were taken together and substantially as true, the jury might reasonably find the defendant guilty.

"A single isolated fact or circumstance might be no evidence, not even a *scintilla;* two, three or more, taken together, might not make evidence in the eye of the law, but a multitude of slight facts and circumstances, taken together as true, might become (make) evidence that would warrant a jury in finding a verdict of guilty in cases of the most serious moment. The court must be the judge as to when such a combination of facts and circumstances reveal the dignity of evidence, and it must judge of the pertinency and relevancy of the facts and circumstances going to make up such evidence. The court cannot, however, decide that they are true or false; this is for the jury; but it must decide that, all together, they make *some evidence,* to be submitted to the jury; and they must be such, in a case like the present, as would, if the jury believed the same, reasonably warrant them in finding a verdict of guilty," citing as authority for the position *Cobb v. Fogalman,* 23 N. C., 440; *S. v. Vinson,* 63 N. C., 335; *Wittkowsky v. Wasson,* 71 N. C., 451; *S. v. Massey,* 86 N. C., 658; *Imp. Co. v. Munson,* 14 Wall., 442; *Pleasants v. Fonts,* 22 Wall., 120.

Applying this principle to the present case, we think the incriminating evidence, taken in its totality, is sufficient to be submitted to the jury, but, of course, we express no opinion as to its weight. *S. v. Young,* 187 N. C., 698, 122 S. E., 667, and cases cited.

We are disposed to agree with the prisoner, however, in his insistence that the evidence of W. C. York, relative to the action of the bloodhounds, should have been excluded from the jury's consideration. *S. v. Norman,* 153 N. C., 591, 68 S. E., 917.

It is fully recognized in this jurisdiction that the action of bloodhounds may be received in evidence when it is properly shown: (1) that they are of pure blood, and of a stock characterized by acuteness of scent and power of discrimination; (2) that they possess these qualities, and have been accustomed and trained to pursue the human track; (3) that they have been found by experience reliable in such pursuit; (4) and that in the particular case they were put on the trail of the guilty party, which was pursued and followed under such circumstances and in such way as to afford substantial assurance, or permit a reasonable inference, of identification. *S. v. McIver,* 176 N. C., 718, 96 S. E., 902; *S. v. Wiggins,* 171 N. C., 813, 89 S. E., 58; *S. v. Spivey,* 151 N. C., 676,

65 S. E., 995; *S. v. Freeman,* 146 N. C., 615, 60 S. E., 986; *S. v. Hunter,* 143 N. C., 607, 56 S. E., 547; *S. v. Moore,* 129 N. C., 494, 39 S. E., 626.

The incompetency of the evidence in the instant case lies in the fact that the action of the bloodhounds was such as to afford no reasonable inference of the identity of the prisoner as the guilty party.

Nor can we safely say that this evidence is so palpably weak and uncertain as to render its admission harmless. There is no telling how far the prisoner's case was affected by it. "When there is error, its *immateriality* must clearly appear on the face of the record in order to warrant this Court in treating it as surplusage." *Pearson, C. J.,* in *McLenan v. Chisholm,* 64 N. C., 324.

For error, as indicated, a new trial must be awarded; and it is so ordered.

New trial.

BROGDEN, J., dissenting: In cases in which the State relies upon circumstantial evidence alone for conviction the facts established or produced at the trial must be of such nature and so related to each other as to point unerringly to the defendant's guilt and exclude every rational hypothesis of innocence. *S. v. Goodson,* 107 N. C., 798; *S. v. Wilcox,* 132 N. C., 1139; *S. v. Melton,* 187 N. C., 481. The incriminating evidence in the case at bar is vague, uncertain and inconclusive as to the vital fact of guilt. Therefore, they are insufficient, 'under the law, to warrant a verdict of guilty, and, in my judgment the trial judge should have nonsuited the case. *S. v. Montague,* 195 N. C., 20.