STATE OF NORTH CAROLINA v. WALTER EDWARD DAVIS, A/K/A MATTHEW EDWARD JOHNSON

No. 8126SC513

(Filed 17 November 1981)

1. **Criminal Law § 44— admission of testimony as to bloodhound's actions—properly admitted**

   Testimony that a bloodhound was of pure blood, had been trained by the witness's supervisor, had worked with the witness in a training capacity a "dozen or so times," and had a very sensitive nose with the ability to discriminate between animal and human scents was sufficient to support a finding that the bloodhound had been properly trained. Further, testimony that the bloodhound followed a scent from the automobile in which a robber had been seen to the service station that he robbed before the bloodhound was taken off the track and then found the scent in the woods close to where the automobile had been found and followed it to the defendant was evidence supporting the finding that the bloodhound was put on the scent and pursued it in such a manner that it would support a reasonable inference of identification.

2. **Criminal Law § 114.2— error in recounting evidence—no expression of opinion**

   It was not reversible error for the trial court to have stated that "he testified he was looking down from his chair on the defendant" while recounting the testimony of a witness when no witness had identified the defendant as the perpetrator of the robbery as throughout the charge the judge referred to "this individual" and only used the word "defendant" once when referring to the person who committed the robbery, and this *lapse linguae* was not brought to the judge's attention.

APPEAL by defendant from *Friday, Judge.* Judgment entered 22 August 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 23 October 1981.

The defendant was tried for armed robbery. The State's evidence tended to show that on 6 June 1980, just before midnight, a motorist saw an automobile parked on a service road near the Race Trac Service Station on Sugar Creek Road in

Charlotte. There were several people in the automobile and the driver was wearing a ski mask. The motorist called the police and while an officer was on his way to investigate the parked vehicle, he received a call that the Race Trac Service Station had been robbed. A bloodhound named "Homer" was brought to the scene. The defendant objected to any testimony as to the actions of Homer and a *voir dire* hearing out of the presence of the jury was held.

Troy Starnes testified at the *voir dire* hearing that he was the Deputy Sheriff of the Mecklenburg County Animal Shelter. He further testified that Homer was four years old, of pure blood, and had lived at the shelter for two years. He had been trained by Mr. Starnes' supervisor. Mr. Starnes had worked with Homer once in a training capacity and had been with him on other trackings a "dozen or so times." He had found Homer to have a very sensitive nose with the ability to discriminate between animal and human scents and between the scents of different human beings. Mr. Starnes also testified that Homer's success rate was about 50% and the success rate of other dogs at the shelter is 65% to 70%. He carried Homer to the automobile in which the man wearing a ski mask had been seen. Homer was placed in the vehicle and he left the vehicle and went to a police car in which another suspect was seated. Mr. Starnes then carried Homer back to the parked automobile. Homer then followed a scent to the Race Trac Service Station. There were several people and vehicles at the station and Mr. Starnes took Homer off the scent and carried him to the edge of the service station parking lot to search for the scent. Homer was unable to find the scent in this area and Mr. Starnes and Homer started back to the parked vehicle to see if they could "start over." They were then called by some officers in the woods by Sugar Creek Road. They went to the place in the woods near Sugar Creek Road and Homer picked up the scent and tracked for approximately ten minutes until they came to the defendant.

At the conclusion of the *voir dire* hearing, Judge Friday found as facts that Homer was a pureblood bloodhound who had an acute scent and power of discrimination, that he had been trained to pursue the human track, that he had been found to be reliable in pursuit, and that he was put on the scent and pursued it in such manner that it would permit a reasonable inference of

identification. Judge Friday allowed the testimony as to the actions of Homer to be introduced into evidence.

The State offered into evidence before the jury testimony substantially the same as offered on the *voir dire* hearing and further evidence which tended to show that Mr. Starnes and three other officers followed Homer through the woods until they came upon Homer standing over the defendant, who was lying on the ground. The defendant was armed with a pistol but offered no resistance to the officers. The defendant was brought back to the police car and his pockets were emptied. Money was taken from both pockets of the defendant and placed on the hood of the police car. The defendant nodded towards the change taken from his right pocket and said "That there, that's mine." The officers found close to the defendant a shirt and tennis shoes which the service station attendant testified were similar to the shirt and shoes worn by the man who robbed him. The person who robbed the service station wore a ski mask at the time of the robbery and the service station attendant could not identify the defendant as the robber.

The defendant did not offer any evidence. He was convicted of armed robbery and appealed from the imposition of a prison sentence.

*Attorney General Edmisten, by Assistant Attorney General Sarah C. Young, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Nora B. Henry, for defendant appellant.*

WEBB, Judge.

The defendant's first assignment of error deals with the admission of the testimony as to Homer's actions. Several cases in this jurisdiction have dealt with the admission into evidence of the actions of bloodhounds. See *State v. Irick*, 291 N.C. 480, 231 S.E. 2d 833 (1977); *State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661 (1965); *State v. McLeod*, 196 N.C. 542, 146 S.E. 409 (1929) and *State v. Hawley*, --- N.C. App. ---, --- S.E. 2d --- (1981). Each of these cases has stated the rule as follows:

> "It is fully recognized in this jurisdiction that the actions of bloodhounds may be received in evidence when it is prop-

erly shown: (1) that they are of pure blood, and of a stock characterized by acuteness of scent and power of discrimination; (2) that they possess these qualities, and have been accustomed and trained to pursue the human track; (3) that they have been found by experience reliable in such pursuit; (4) and that in the particular case they were put on the trail of the guilty party, which was pursued and followed under such circumstances and in such way as to afford substantial assurance, or permit a reasonable inference, of identification."

The defendant argues the evidence was not sufficient to support the admission of evidence as to Homer's actions. He says the evidence was insufficient as to the second requirement that Homer had been properly trained to pursue the human track, and the fourth requirement that Homer was put on the trail of the guilty party under such circumstances as to afford substantial assurance or permit a reasonable inference of identification.

Mr. Starnes testified that Homer had been trained by Mr. Starnes' supervisor; that Mr. Starnes had worked with him once in a training capacity and on a "dozen or so" other trackings and had found him to have a very sensitive nose. We believe this is sufficient evidence for a finding that Homer had been properly trained. *See State v. Irick, supra* at 495. The defendant points out that Mr. Starnes testified that during practice sessions Homer was 65% reliable and in other sessions he was 50% reliable while the other dogs at the shelter were 65% to 70% reliable. This is evidence that Homer had not been properly trained. We believe the evidence that Homer was properly trained supports Judge Friday's finding to that effect. Since there is evidence to support this finding of fact, we cannot disturb it.

As to the defendant's argument that Homer was not put on the trail under such circumstances as to permit a reasonable inference of identification, the defendant relies on *State v. Lanier*, 50 N.C. App. 383, 273 S.E. 2d 746 (1981) and *State v. Marze*, 22 N.C. App. 628, 207 S.E. 2d 359 (1974). In *Lanier* this Court held that the testimony as to the actions of the bloodhound provided no evidence that the defendant was ever at the crime scene. We believe the instant case is distinguishable from *Lanier*. The testimony that Homer followed a scent from the automobile to

the service station before he was taken off the track and then found the scent in the woods by Sugar Creek Road and followed it to the defendant would place the defendant at the service station. We also believe this evidence supports the finding of fact by Judge Friday that Homer was put on the scent and pursued it in such manner that it would support a reasonable inference of identification. In *Marze* the bloodhound was put on a scent located three to four hundred feet from a house which had been the object of a breaking and entering. This Court held there was no evidence that the thief had ever been at the position at which the bloodhound was released. In the instant case there was evidence that the robber had been at the automobile where Homer first started tracking and at the service station. The defendant's first assignment of error is overruled.

[2] In his second assignment of error the defendant contends the court committed error in the charge. While recounting the testimony of the service station attendant, the court stated "He testified that he was looking down from his chair on the defendant." Neither the service station attendant nor any other witness had identified the defendant as the perpetrator of the robbery. The defendant relies on *State v. Oakley,* 210 N.C. 206, 186 S.E. 244 (1936) as precedent for reversible error. In *Oakley,* a capital case, the judge interrupted a witness and asked him "You tracked the defendant to whose house?" Although the judge instructed the jury that he had not intended to use the word "defendant" but should have said "He followed a set of tracks to whose house?" our Supreme Court held it was reversible error. All the evidence was circumstantial as it was in the instant case and the Supreme Court held this question by the judge to be an expression of opinion which required a new trial. We do not believe *Oakley* requires a new trial in this case. Throughout the charge Judge Friday referred to "this individual" and only used the word "defendant" once when referring to the person who committed the robbery. This *lapse linguae* was not brought to his attention. We believe from reading the charge as a whole, it is clear the judge did not intimate he thought the defendant committed the robbery and it was for the jury to determine that he did so from all the circumstances.

No error.

Judges MARTIN (Robert M.) and WELLS concur.