TYSON, Judge.
 

 *101
 
 Jeffery Jamar Barrett ("Defendant") appeals from a judgment entered following a jury's conviction for one count of common law robbery. We affirm the lower court's decision and find no error.
 

 *102
 
 I.
 
 Background
 

 A man entered into a Taco Bell restaurant located on Battleground Avenue in Greensboro and stole cash from the register on 8 February 2015. Greensboro police officers used Carlo, a trained tracking dog, to follow the thief's scent. Officer McNeal, the dog's handler at the time, testified to Carlo's 2,000 hours of training and to Carlo's more than 1,000 deployment searches.
 

 Officer Douglas responded to the robbery by establishing a perimeter and looking for suspects. Officer McNeal and Carlo located a sweatshirt, a toboggan, gloves, and two bank bags. He observed Defendant walking down the street within the perimeter. Officer Douglas stopped Defendant, patted him down for weapons, and noticed copious amounts of cash in his pockets that was organized by its face value.
 

 Officer Rodriguez collected the evidence, photographed the items found by Carlo, and took a swab of Defendant's DNA. Greensboro police officers sent the evidence and the DNA swab to the North Carolina State Crime Laboratory.
 

 A forensic scientist at the crime lab generated a DNA profile from the swab and compared it to DNA found on the recovered items. She concluded that the DNA profile on the glove was consistent with two individuals and that Defendant could not be excluded as a contributor to the multiple major profiles.
 

 Defendant also made a phone call while in custody, which Detective Tyndall subsequently reviewed. Defendant recalled the circumstances of his arrest for robbery on 8 February 2015 and discussed the shoes he had worn during the incident.
 

 A jury convicted Defendant and returned a verdict of guilty to one count of common law robbery. He was sentenced to a minimum of fourteen months and a maximum of twenty-six months imprisonment. Defendant gave oral notice of appeal in open court.
 

 II.
 
 Jurisdiction
 

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444 (2017).
 

 III.
 
 Standard of Review
 

 A trial court's determination of an expert witness's qualifications and admission of testimony is reviewed for abuse of discretion.
 
 State v. Washington,
 

 141 N.C. App. 354
 
 , 362,
 
 540 S.E.2d 388
 
 , 395 (2000).
 

 *103
 
 IV.
 
 Issues
 

 Defendant argues the trial court erred in allowing the introduction and admission of evidence found by a tracking dog.
 

 V.
 
 Analysis
 

 Ninety years ago, the Supreme Court of North Carolina laid out a four-factor test to establish reliability of a tracking dog in
 
 State v. McLeod
 
 :
 

 the action of bloodhounds may be received in evidence when it is properly shown: (1) that they are of pure blood, and of a stock characterized by acuteness of scent and power of discrimination; (2) that they possess these qualities, and have been accustomed and trained to pursue the human track; (3) that they have been found by experience [to be] reliable in such pursuit; (4) and that in the particular case they were put on the trail of the guilty party, which was pursued and followed under such circumstances and in such way as to
 
 *698
 
 afford substantial assurance, or permit a reasonable inference, of identification.
 

 State v. McLeod
 
 ,
 
 196 N.C. 542
 
 , 545,
 
 146 S.E. 409
 
 , 411 (1929) (citations omitted).
 

 Over time, certain elements stated in this standard rule have changed. The current analysis demonstrates "a decreasing emphasis on the requirement that the tracking dog be a pure blood bloodhound" in the first element of the test, "yet [it] continue[s] to require the dog to have training, experience, and proven ability in tracking."
 
 State v. Green
 
 ,
 
 76 N.C. App. 642
 
 , 645,
 
 334 S.E.2d 263
 
 , 265 (1985).
 

 In
 
 State v. Rowland
 
 ,
 
 263 N.C. 353
 
 ,
 
 139 S.E.2d 661
 
 (1965), a police officer arrived with a tracking dog at the scene of a robbery. The dog followed a trail which led to the perpetrator of the crime.
 
 Id
 
 . at 355,
 
 139 S.E.2d at 663
 
 . The defendant alleged the State failed to identify the dog as a purebred hound.
 
 Id
 
 . at 359,
 
 139 S.E.2d at 665
 
 . The court held the dog had pedigreed himself through his abilities to track and find evidence, despite the State's failure to meet the first requisite of the
 
 McLeod
 
 four-factor test.
 
 Id.
 
 at 360,
 
 139 S.E.2d at 666
 
 .
 

 The Supreme Court decided "the conduct of the hound and other attendant circumstances, rather than the dog's family tree" are factors to the admissibility of the evidence.
 
 Id.
 
 at 359,
 
 139 S.E.2d at 665
 
 . The evidence a tracking dog finds on the trail may be admitted, "
 
 if
 
 [the dog] is
 
 *104
 
 shown to be naturally capable of following the human scent" and "
 
 if
 
 the evidence is corroborative of other evidence tending to show defendant's guilt."
 

 Id.
 

 (emphasis in original).
 
 See also
 

 Green
 
 ,
 
 76 N.C. App. at 645
 
 ,
 
 334 S.E.2d at 265
 
 (upholding a defendant's conviction where a tracking dog has identified the perpetrator).
 

 A.
 
 Type of Hound
 

 Defendant objects to the use of the evidence found by Carlo because "[t]here was never any testimony as to what kind of dog Carlo was." Defendant asserts the State failed to lay a proper foundation for the "testimony of the 'expert' dog Carlo." However, Officer McNeal established that during the February robbery incident he responded and deployed a tracking dog. A tracking dog "looks for disturbance[s]" and has been "trained ... to detect specific odors" including "human odors."
 

 The 1929
 
 McLeod
 
 test has been modified over time and courts have recently placed less emphasis on the breed of the dog and placed more emphasis on the dog's ability and training. Although the State failed to identify Carlo's breed and never proffered any evidence that Carlo was "of pure blood," the officer's sworn testimony elaborated on Carlo's training and ability which corroborated other evidence that tended to show Defendant's guilt.
 
 See
 

 Rowland
 
 ,
 
 263 N.C. at 359
 
 ,
 
 139 S.E.2d at
 
 665 ;
 
 McLeod
 
 ,
 
 196 N.C. at 545
 
 ,
 
 146 S.E. at 411
 
 .
 

 B.
 
 Training and Experience
 

 Officer McNeal testified to Carlo's "training, experience and proven ability in tracking."
 
 Green
 
 ,
 
 76 N.C. App. at 645
 
 ,
 
 334 S.E.2d at 265
 
 . Officer McNeal explained that Carlo had received training locally and elaborated on the training process. He said the tracking dogs, including Carlo,
 

 are trained to differentiate in disturbances in the environment, such as broken grass blades, rocks that are kicked over. All of that creates an odor for the dog. In conjunction with skin cells and other odors that are falling off the person, the dog is trained to track that from the point where it starts to wherever the point of the odor is.
 

 Officer McNeal testified Carlo had "probably more than 2,000 hours of training since [he] worked [with] him." Carlo alerts by "lay[ing] down over top of the article with the article between his two front paws with his nose as close to the object as he can." Carlo is certified annually by the International Police Work Dog Association to demonstrate "his proficiency" in detecting human odors on inanimate objects.
 

 *105
 
 C.
 
 Proven Ability
 

 Officer McNeal also explained that the tracking dogs work city-wide to respond to situations which require evidence to be located. Carlo had conducted over a thousand searches since he began working with Officer McNeal. During the 8 February 2015 robbery
 
 *699
 
 incident, Officer McNeal deployed the tracking dog to look for a disturbance in the area.
 

 During this deployment, Carlo tracked from the back side of the Taco Bell to an old Sears Distribution Center parking lot where he discovered a sweatshirt, toboggan, gloves and two bank bags. Carlo alerted Officer McNeal that he smelled "recent human odor" and laid down over top of the sweatshirt, toboggan, and gloves with the articles between his front paws and his nose close to the articles, as he had been trained to do.
 

 This testimony demonstrates Carlo had been sufficiently trained, had the appropriate ability to perform these tasks and had properly responded as trained. The trial court admitted the evidence, over objection, ruling that the proper foundation had been laid for the police tracking dog's training and reliability.
 

 D.
 
 Corroborating Evidence
 

 The State also introduced evidence which corroborated Defendant's guilt. Officer Douglas apprehended Defendant within the established perimeter from the site of the robbery. Defendant's pockets were "stuck open" with wads of cash and his clothing matched the 911 caller's description of the thief.
 

 Defendant made a phone call in jail that indicated to Detective Tyndall the correct suspect had been apprehended. Defendant remarked on the circumstances of his arrest and described gray-green shoes he had worn during the robbery. The detective testified that the shoes Defendant described had been collected at the police station during the booking process. Defendant also stated on the telephone call, "I done thrown it away again ... the same way I did when I went to Leesville, Louisiana." Defendant had been previously arrested and served a prison sentence for robbery in Leesville, Louisiana. Evidence and testimony presented at trial corroborated the results of Carlo's tracking.
 

 Presuming
 
 arguendo
 
 , the trial court had erred in admitting testimony about the tracking dog's actions and the items found, the attendant circumstances and corroborating evidence presented at trial supported the jury's verdict finding Defendant guilty as the perpetrator.
 

 *106
 
 The State presented other overwhelming evidence of Defendant's guilt. Any asserted error would be harmless.
 

 VI.
 
 Conclusion
 

 The State laid a proper foundation for admission into evidence the actions and results by Carlo, the tracking dog. Defendant has failed to show the trial court abused its discretion by admitting the evidence found by Carlo for the jury to consider.
 

 Defendant received a fair trial, free from prejudicial error. We find no error in the jury's verdict or in the judgment entered thereon.
 
 It is so ordered.
 

 NO ERROR.
 

 Judges BRYANT and ZACHARY concur.