'JACK SPEARS *v.* STATE OF MISSISSIPPI.

[46 South., 166, 16 L. R. A. (N. S.), 185.]

1. CRIMINAL LAW AND PROCEDURE. *Arson. Character of building burned. Dwelling house. Code* 1906, § 1036.

A room joined to a dwelling house by an unenclosed passage way and a roof, so that fire would easily and quickly be communicated from the one to the other, is a part of the dwelling, although used for the storage of fodder, under Code 1906, § 1036, making it a capital felony to burn in the night time a dwelling house in which there shall be at the time some human being usually staying, lodging or residing at night.

2. SAME. *Evidence. Bloodhounds.*

It is competent in the trial of a criminal case to show that pure blooded bloodhounds, trained to track human beings, were, by an experiencd trainer, put on the trail at the place where a crime was committed, shortly after its commission, and that they followed it to the home of the accused and identified him; and cannot be rebutted by testimony touching the conduct of other dogs trained by the same person.

3. SAME. *Corpus delicti in arson.*

Proof of the burning of the house does not establish the *corpus delicti* in arson; there must in addition be proof of a criminal agency.

4. SAME. *Confession.*

Proof that a rustling noise was heard just before the fire broke out at the place where it started, that the house was burned, that trained bloodhounds tracked accused from the premises to his home and identified him and that footprints were found along the way corresponding to the shoes worn at times by the accused, sufficiently establishes the *corpus delicti* to justify the introduction of a confession by the accused.

FROM the circuit court of Pontotoc county.

HON. EUGENE O. SYKES, Judge.

Spears, appellant, was indicted, tried and convicted of arson, sentenced to the penitentiary for life and appealed to the supreme court.

It was shown on the trial that the house which was destroyed by fire was occupied by Henry Bullard and wife, an aged couple, who were asleep in one room of it when the fire started; that there was joined to the house by an uninclosed passage way and roof a room used for storage of fodder; that the fire started in the fodder room, and was quickly communicated to the rest of the house. Bullard was asleep, and was awakened about eleven o'clock at night by a rustling noise in the fodder, to which he paid little attention, thinking it was caused by cats. Soon afterwards he discovered the house was afire, and he and his wife escaped from the building. The next morning one Tate arrived with pureblooded and reliable bloodhounds, owned and trained by him. The dogs were taken to the spot where the fire started, and immediately took a trail and followed it without hesitation through a circuitous route to the home of accused, where they identified him in the way peculiar to well trained bloodhounds. Other facts are stated in the opinion of the court.

*Mitchell & Mitchell* and *Fontaine & Fontaine,* for appellant.

Appellant was indicted for burning a dwelling house, and the testimony of Bullard showed that the fire, if set at all, was set to an old log house, which had been abandoned for more than two years prior to the burning, as a dwelling, but was joined to the dwelling house by a covered porch or passage way, the covering of which had partly fallen in and was used at the time of burning as a barn for the storing of fodder, and was full of fodder when burned. The testimony of Bullard, we think, shows conclusively that the house to which the fire was set, if any fire was set, adjoined to the dwelling house in which Bullard lived, and if any crime was committed it was in violation of Code 1906, § 1038, and not § 1036, the section under which appellant was indicted, tried, convicted and sentenced. The words "adjoining to" used in § 1038 should be strictly construed in favor of appellant, and according to Webster the word "adjoin" means, to unite to; to be in contact with; to attach;

and the argument that the statute says "every person who shall willfully set fire to or burn in the nighttime" is in the disjunctive, and that by setting fire to an adjoining house appellant burned the dwelling house, will not do, because appellant is indicted for setting fire to and burning in the nighttime the dwelling house of Henry Bullard, etc.

As to the conduct of the so-called bloodhounds. This is a new question before this court. The most thorough discussion of this character· of testimony is found in the case of *Pedigo* v. *Com.,* 103 Ky., 41, 82 Am. St. Rep., 566.

Other discussions of the subject are found in *Hodge* v. *State,* 98 Ala., 10, 13 South., 385; *Simpson* v. *State,* 111 Ala., 6, 20 South., 573; and *State* v. *Hall,* 3 Ohio N. P., 125. In the *Pedigo case* it is held that one of the conditions precedent to the introduction of such testimony is that there must be proof by some person who knows that the dogs in question are trained to track human beings. In the present case it was attempted to prove by the witness, Tate, that the dogs were so trained, but upon a view of the whole testimony it is conclusively established that they were not so trained. These same dogs were carried to the residence of one Jenkins to track some parties who had set fire to the barn of Jenkins. The dogs were carried to the barn and "hiked," and they actually took the trail of a cow and trailed her off into the pasture.

Tate, the owner of the dogs, admitted this to be a fact and after being taken from the cow track the same dogs took the track of a mule. From the testimony of the witness, Tate, describing the conduct of the dogs after trailing a party to a house in Ripley, it is shown that these dogs would trail at any time when they were "hiked," whether there was any trail in fact or not. This seems to be conclusive that they were not trained to track human beings, but that they would track cows and horses and perhaps any other animal as well. Who could say what they trailed from the house of Henry Bullard?

Another condition precedent as laid down in the *Pedigo case*

is that the dogs must have been placed on the trail at a point where the evidence shows that the criminal, if there be one, had been.

This was not done in the instant case, according to the testimony of the witness, Warren, who saw the fire just as it originated, it having been set in the southwest corner of the log house. According to all the witnesses the dogs were not carried to this corner of the house at all.

The court should have excluded the testimony of witnesses, with reference to statements made by appellant because the *corpus delicti* had not been proved. The *corpus delicti* is not merely that the house burned, as was held in *Sam's case,* 33 Miss., 347, but that it was burned through or by some criminal agency. The presumption is, every burning is accidental until the contrary is proven. And we contend no criminal agency was shown by any witness in the case, but on the contrary all the facts and circumstances of the burning tend to corroborate the presumption of law that the burning was accidental.

No motive, ill will, or malice on the part of appellant was shown. Bullard, the man whose house was burned states that he and appellant were friendly.

The doctrine held in *Sam's case, supra,* namely, that the mere burning in the case of arson, and the death of a human being in a case of murder, constitute the *corpus delicti,* has been overruled in the case of *Pitts* v. *State,* 43 Miss., 472, which holds that not only the basis of the offense, but a criminal agency must be proved, to constitute the *corpus delicti. Brown* v. *Com.,* 89 Va., 379; *Winslow* v. *State,* 76 Ala., 42; 2 Am. & Eng. Ency. of Law (2d ed.), 938, and notes; *Pitts* v. *State,* 43 Miss., 472.

The presumption of law is that every burning is accidental. 2 Am. & Eng. Ency. of Law (2d ed.), 938, notes 1 and 2; 3 Cyc., 1003; *Phillips* v. *State,* 29 Ga., 105; *Stallings* v. *State,* 47 Ga., 502.

*R. V. Fletcher,* attorney general, for appellee.

It is ingeniously and ably argued that this appellant could not be guilty of capital arson because the house where the fire originated was adjoining to the dwelling house and was not the house itself.

Fire was set to a room filled with fodder. This room was not a part of the main or occupied house but there were a floor and a roof connecting this fodder room with the main rooms. It was as much a part of the house as a kitchen would be part of a house from which it projects. Tested by any rule this room was part of the dwelling house. Certainly it will not do to say that it shall not be so considered merely because of its use. It could make no difference that the owner saw proper to store fodder therein. Equally it is impossible to say that because the passage connecting the fodder with the rest of the house was not all closed up it was not a part of the dwelling house. A vast number of substantial homes throughout the country are constructed so as to attach the two main parts of the houses by an entry or passage constructed precisely as was the passage in the case at bar.

The only possible consideration that could lend color to appellant's contention is the use of the words "adjoining to" in Code 1906, § 1038. But this section is limited by its term to shop, warehouses, outhouses and other buildings not mentioned in the preceding sections. But dwelling house is mentioned explicitly in Code 1906, § 1036, the section under which this conviction was had and therefore the statute does not apply. ·

Coming now to the question of the bloodhound testimony, it is admitted by appellant that such testimony is competent if the dogs are shown to have been trained to track human beings, that they are of pure blood characterized by keenness of scent; that they were put on the trail at the place where it is shown that the criminal agency must have had its origin. All these requirements were met in the instant case.

It is strongly urged that the court should not have admitted

the statements of defendant since they were in the nature of
confessions, and the *corpus delicti* had not been proven.   Of
course this contention is completely answered by *Sam's case,*
33 Miss., 347, which held that the *corpus delicti* in a case of ar-
son is the burning of the house.   It is said that this case is
overruled in *Pitts case,* 43 Miss., 472, but it is respectfully
submitted that this is not a fact.   For the *Pitts case* says that
the *corpus delicti* can be shown like any other fact by circum-
stantial evidence.   In the case at bar, the burning of the house
is shown; the witness Bullard heard a rustling in the fodder
just before the fire broke out; the trained bloodhounds tracked
defendant to his home and there identified him in their own
peculiar way, and a track was found along the way which cor-
responded to a shoe shown to have been worn at certain times,
by defendant.   Thus the very proof which fastens the crime
on defendant likewise establishes at the same time the existence
of the criminal agency.   Counsel cite as authority a statement
of the text contained in 2 Am. & Eng. Ency. of Law (2d ed.),
938, as to what constitutes the *corpus delicti* in arson.   That au-
thority is to the effect that it is not sufficient to show that the
house was burned but that the prosecution must further show
that it was burned by the willful act of some person criminally
responsible for his acts.   Curiously enough, *Sam's case* in 33
Miss., is cited as supporting this conclusion, where as a matter
of fact *Sam's case* holds the exact contrary.   However, it is not
necessary in this case to attack the statement of the text since
here we have circumstances which rebut and destroy the pre-
sumption that the fire was accidental.   The fire originated in a
room of the house where no fire could have been kept, at a time
of night when no one could in the nature of things have acci-
dentally set fire to the premises, long after the inmates of the
house had gone to sleep; a noise was heard, tracks found and a
bloodhound tracked a man to his home and identified him as the
man whom he had been trailing.   I am perfectly content to rest
this question upon the authorities relied on by appellant, to-wit:

*Sawyer* v. *Co.,* 88 Va., 256; *Winslow* v. *State,* 76 Ala., 42; *Phillips* v. *State,* 29 Ga., 105.

Argued orally by *J. H. Mitchell* and *J. B. Fontaine,* for appellant, and *R. V. Fletcher,* attorney general, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

Under the facts in this case the house in which the fodder was located was a part of the dwelling house, and the indictment was properly drawn under Code 1906, § 1036.

We think the tests as to the competency of the bloodhound testimony set out in the *Pedigo case,* 103 Ky., 41, 44 S. W., 143, 42 L. R. A., 432, 82 Am. St. Rep., 566, were sufficiently met by the testimony in this case. See *State* v. *Dickerson* (Ohio), 82 N. E., 969, and *State* v. *Hunter,* 143 N. C., 607, 56 S. E., 547, 118 Am. St. Rep., 830, which last case we refer to specially. That testimony sufficiently shows that these dogs had been well trained to track human beings, that they were of pure blood, that in this case they were put on the trail at a place where it was shown that the criminal agency must have had origin (one witness says in about six feet of the place), that the owner of the dogs, Tate, was an experienced dog trainer, that these dogs had pedigrees showing they were of pure blood, and that they had been subjected to severe and satisfactory tests in the tracking of persons.

The announcement in *Sam's case,* 33 Miss., at page 352, as to what constitutes the *corpus delicti* in arson, is very vague and unsatisfactory. If it was meant to declare that the mere proof of the burning of the house is sufficient evidence of the *corpus delicti* in a case of arson, we disapprove and overrule that announcement. The *corpus delicti* in a case of arson consists, not only in the proof of the burning of the house or other thing burnt, but of criminal agency in causing the burning. The *Pitts case,* in 43 Miss., 472, announces the true doctrine, and practically overruled *Sam's case* so far back as 1870. Speaking of what constitutes the *corpus delicti* in a case of fe-

lonious homicide, the court said in that case, at page 480: "In a case of felonious homicide, it consists of two substantial fundamental facts: (1) The fact of the death of the deceased; and (2) the fact of the existence of criminal agency as the cause of the death. The first of these constituents is always required to be proved, either by direct testimony or by presumptive evidence of the strongest kind. And the second of these constituents becomes a proper subject of presumptive reasoning upon all the facts and circumstances of the case. A dead body, or its remains, having been discovered and identified as that of the person charged to have been killed, and the basis of the *corpus delicti* being thus fully established, the next step in the process, and the one which serves to complete the proof of that indispensable preliminary fact, is to show that the death has been occasioned by the criminal act or agency of another person. This may always be done by means of circumstantial evidence. All the facts and circumstances of the case may be taken into consideration."

We think that, in this case, the testimony furnished by the bloodhounds and the other circumstances, not necessary here to be detailed fully, sufficiently show the criminal agency. We will mention simply these: The witness Bullard heard a rustling in the fodder just before the fire broke out which he supposed was caused by house cats. The trained bloodhounds tracked defendant to his home and identified him in their peculiar way, and a track was found along the way leading to the house which corresponded to a shoe shown to have been worn at certain times by the defendant. The *corpus delicti,* we think, was therefore sufficiently shown, and the confessions of the accused were consequently properly admitted.

The court properly excluded from the jury evidence as to the conduct of other bloodhounds which had been trained by the witness Tate. On this point the Alabama supreme court said in the case of *Simpson* v. *State,* 111 Ala., 6, 20 South., 573: "The court properly excluded from the jury the proposed

evidence as to two bloodhounds of the same breed of those employed to track the supposed criminal in this case, and trained by the same man, being put upon the trail of a human being, and leaving it to trail a sheep, which they overhauled and killed. The test by comparison was not sufficiently certain to determine the reliability of the dogs employed here by reference to the qualities of other dogs." And this opinion was by Judge McClellan, one of the greatest of American judges.

The confessions of the accused are conclusive against him. He made these confession to Frank Poyner, John Kelly, and others. Kelly testified that he heard the accused tell Soulee Sledge, his brother-in-law, at Hodges' store, the morning after the fire, that "he [the accused] had finished burning out old man Bullard last night, and the hounds had run him up to his house." Soulee Sledge, the brother-in-law of the accused testified positively that the accused tried two or three times to get the witness to help him do the burning; that he (the accused) said to Sledge: "I bought some land adjoining this place [*i. e.,* Bullard's place], and if you will help me to get it I will sell you the north eighty acres for half of what it is worth. He said that he wanted old man Bullard out of there, and he was going to get him out of there." Other witnesses who testified along this line against the accused are Edward Hodges and Samuel Hunter.

Accused's defense was an alibi, testified to by his own family and other relatives. John Henry Wilson, a witness for the state, testified that he arrested the accused, and that the accused told him that he (the accused) had come home late Friday night, and, being tired, had gone straight to bed. The jury evidently believed this witness, and were warranted, under all the testimony in the case, in rejecting this defense of an alibi.

There is no merit whatever in any other of the many assignments of error.

The judgment is affirmed.

*Affirmed.*