## HARRIS *v.* STATE.*

(Division A. May 17, 1926.)

[108 So. 446. No. 25600.]

1. CRIMINAL LAW. *Evidence that bloodhound tracked defendant from site of crime is admissible only after proof that dogs were pure bred and trained and reliable, and that track was made by person committing crime.*

   Although fact that bloodhounds trailed defendant from track at place where person committed crime must have stood is circumstance indicating crime was probably committed by defendant, such evidence is admissible only after preliminary proof that bloodhounds were pure bred, and trained to track human beings, and were reliable and that track where bloodhounds started was made by person committing crime.

2. CRIMINAL LAW. *Admitting evidence that bloodhounds tracked defendants held error, in absence of showing that bloodhounds were pure bred, and had been tested and found reliable.*

   Admitting evidence that bloodhounds tracked defendant from place of crime *held* error, in absence of showing that bloodhounds were pure bred, and had been tested and found reliable.

   *Corpus Juris-Cyc References: Criminal Law, 16CJ, p. 564, n. 47, 48; p. 565, n. 58, 59, 60, 63; 17CJ, p. 330, n. 34; Evidence of trailing by bloodhounds, see notes in 42 L. R. A. 432; 35 L. R. ʌ. (N. S.) 870; L. R. A. 1917E, 730.

APPEAL from circuit court of Lafayette county.
HON. T. E. PEGRAM, Judge.

John Harris was convicted of murder, and he appeals. Reversed and remanded.

*Geo. T.* and *Chas. S. Mitchell* and *J. W. T. Falkner,* for appellant.

The first assignment of error goes to the action of the court in admitting in evidence, over objection and exception of defendant, the testimony in regard to the ac-

tion of the so-called bloodhounds. While there is a diversity of opinion among the courts of the different states as to the admissibility of dog testimony, yet our court has aligned itself with those courts holding such testimony competent when the proper predicate has been laid. *Spears* v. *State,* 92 Miss. 613, 46 So. 166. The opinion in this case was based upon the holding in the *Pettigo case,* 103 Ky. 41, 42 L. R. A. 432, and the *Hunter case,* 143 N. C. 607, 56 S. E. 547. But in the Spears case, Chief Justice WHITFIELD in delivering the opinion of the court stated distinctly and positively the necessary prerequisites to the introduction of such testimony and in this connection used the following language:

"The testimony sufficiently shows that these dogs had been well trained to track human beings, *that they were of pure blood,* that in this case they were put on the trail at a place where it was shown that the criminal agency must have had its origin (one witness stated in about six feet of the place), that the owner of the dogs, Tate, was an experienced dog trainer, that these dogs had pedigrees showing *that they were of pure blood,* and that they had been subjected to severe and satisfactory tests in the tracking of persons." (Italics ours.) Until these prerequisites are shown, this testimony of the dogs is not admissible in evidence.

When the owner of these dogs, Camp, was asked if they were registered, he answered that they were subject to registration. Counsel for defendant immediately objected to further testimony as to the dogs, which objection was overruled by the court and a proper exception taken. The statement of the witness that they were subject to registration was simply the expression of his opinion. The announcement of the law as given in the Spears case as to the necessary qualifications of the dogs was utterly ignored.

Should this court deviate in the least from the holding in the Spears case, then we are most certainly treading upon dangerous ground. We should recognize that the

testimony of dogs is hearsay of the rankest type and can barely escape a violation of the letter of the constitution, much less its spirit. The dogs are not subject to cross-examination and the jury does not even have the opportunity to see the dogs and judge them. Such testimony cannot be given by the dogs themselves but only by a deeply interested interpreter, the owner of the dogs who is prompted to show to the world that his dogs are invariably correct for the reason that he has trained them for pay; and the more successful they are and the more successful he pictures them to be, the more profitable they will be to him.

Again, so-called bloodhound testimony has a strange and convincing effect upon the average juror. For a discussion of "bloodhound" testimony, see Underhill's Criminal Evidence (3 Ed.), sec. 569, p. 810.

To show the doubt of our own supreme court as to the value or credibility of dog testimony, even where all the necessary prerequisites have been shown, our court has twice held that the testimony of the dogs alone is not sufficient to sustain a conviction, but that other and human testimony must be introduced to corroborate the dogs. *Carter* v. *State,* 64 So. 215, 106 Miss. 507; *Scott* v. *State,* 66 So. 973, 108 Miss. 464.

*L. C. Andrews* and *Rush H. Knox,* Attorney-General, for the state.

The appellant asks a reversal of this case because he says that the court erred in admitting the evidence as to the acts and conduct of the bloodhounds. What was said by the court in the *Spears case,* 92 Miss. 613, can well be said with reference to the evidence in this case.

In the instant case the record shows that these dogs had had broad experience and that they had been very successful on former occasions in trailing down and identifying other prisoners; that they were put on the trail where it was shown that the criminal agency must have

had its origin (one witness says about fifteen feet from the window where the track was found); that the owner of the dogs, Camp, was an experienced dog trainer; that the dogs in question were subject to registration—and there is a difference between registration and pedigrees. This court did not hold in the Spears case, and has never held, that it was a prerequisite to the admissibility of bloodhound evidence that the dogs should be registered. As we understand the Spears case, it was merely testified to there that Tate's dogs were experienced dogs and that they had pedigrees showing that they were pure blood; it did not show that they were registered but merely subject to registration. In the case at bar, Camp swore that his dogs had been well trained to trail human beings, that he was an experienced trainer and that his dogs were subject to registration, meaning, of course, that the pedigree or lienage of Bulah and Hambone was such as to entitle them to registration, which would be nothing more than a certificate certifying to just what Camp swore, which certificate if introduced very likely would have met objection on the ground that it was another species of hearsay evidence, issued by some unknown person that had never seen the dogs and knew absolutely nothing about their training or the skill of the trainer. I think the showing made in this case is a much stronger one in favor of bloodhound evidence than was made in the Spears case, and I believe that after a careful reading of that case, the court will come to the same conclusion.

Camp testified that these dogs were reliable; that they would not trail any track save that of a human being; and I cannot see where it would add anything to the reliability, efficiency, accuracy or skill of any bloodhound to have his name registered on some book in Chicago or Providence, Rhode Island. This would not make his sense of smell any better; it would not make him run any faster, or say "bow-wow" any louder.

This case should be affirmed.

Argued orally by *Geo. T. Mitchell,* for appellant, and *Rush H. Knox,* Attorney-General, and *L. C. Andrews,* for the state.

Smith, C. J., delivered the opinion of the court.

This is an appeal from a conviction of murder followed by a life sentence to the penitentiary. The deceased was assassinated while asleep in his room by a shot fired through a window thereof. No one saw the person who fired the shot, and the conviction rests wholly on circumstantial evidence. One of the circumstances on which the conviction rests, and the only one necessary to be here set forth, was the conduct of the two dogs who are said to have followed a track from near the window through which the deceased was shot to the appellant's home, and to have identified the appellant as the person whose track they followed. The killing occurred at about eight o'clock at night, and quite a crowd seems to have shortly gathered at the deceased's home. Between 9:30 and ten o'clock a constable arrived on the scene, caused the crowd to depart from the vicinity of the window through which the deceased was shot, and thereafter until the arrival of the dogs next morning guarded a track in the flower bed, the toe of which pointed toward the window through which the deceased was shot. It seems from the evidence that the crowd had gathered and stood near this window before the track was discovered, and it does not appear that the track was not made by a member of the crowd, but there were circumstances which tended to show that the shot which killed the deceased was fired from about where the track was. When the dogs were shown the track, they tracked therefrom through the gate of the deceased's yard for a short distance, and then back to the scene of the killing, and from there again through the gate, and partly along a public road to the door of the appellant's residence about a half mile from where the killing occurred. When the dogs and the per-

sons having them in charge arrived at this door, the appellant opened it and admitted them, whereupon one of the dogs looked at him and barked twice, thereby, according to their owner who accompanied them, indicating that he was the man whose track they had followed.

This evidence was admitted over the appellant's objection, the ground of which was that a proper predicate for the admission of the evidence had not been laid. For the purpose of this discussion we will assume that the track which the dogs tracked to the appellant was sufficiently identified as having been made by the person who fired the shot which killed the deceased.

The fact that a bloodhound, when shown a track at or near the place where the person who committed the crime must have stood when committing it, tracked definitely therefrom to the accused is a circumstance indicating that the crime was probably committed by the accused. ''Nevertheless, in actual usage, this evidence is apt to be highly misleading, to the danger of innocent men. Amidst the popular excitement attendant on a murder and the chase of the suspect, all the facts upon which the trustworthiness of the inference rests are apt to be distorted in the testimony. Moreover, the very limited nature of the inference possible is apt to be overestimated—a consequence dangerous when the jurors are moved by local prejudice.'' 1 Wigmore on Evidence (2 Ed.), section 177. Consequently, such evidence is admissible only after preliminary proof that the bloodhound which tracked to the accused is pure bred, has been well trained to track human beings, has been well tested by tracking other men and found reliable, and that the track from which the bloodhound tracked to the accused was made by the person who committed the crime. *Spears* v. *State*, 92 Miss. 613, 46 So. 166, 16 L. R. A. (N. S.) 285; 1 Wigmore on Evidence, *supra*, where the authorities bearing hereon are collated; Underhill on Criminal Evidence (2 Ed.), section 374a.

The evidence here fails to meet this test, for it does not appear therefrom: (1) That the bloodhounds were pure bred and (2) had been tested by tracking other men and found reliable. The statement by the owner of the dogs that they were subject to registration proves nothing as to the purity of their breed, for, in addition to the opinion feature thereof, it does not appear what the qualifications for the registration of bloodhounds are, nor what the character and authority is of the person or board that determines the right of a bloodhound to be registered and keeps the record thereof. One, and probably the only sure, test of the reliability of a bloodhound in tracking human beings is to put it repeatedly in a track known to have been made by a particular person, and see if it will track therefrom to that person. These tests should be so made as to demonstrate that the dog will continue to follow the same track and not leave it for another.

For the error in admitting this evidence, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*