John J. Walsh, J.
This court, having already held that subject to a proper foundation, evidence of trailing by bloodhounds is admissible in a criminal trial in this State, the question now arises whether sufficient foundation has been laid during the preliminary questioning to permit the prosecution to now present evidence concerning the actions and conduct of the dog, Colonel of Bedstone when placed on the trail on April 19, 1968, the date of the alleged robbery at the Cingranelli home.
What foundation is required is not specifically defined in this State. This court is obliged therefore to make a determination according to the best line of reason and authority at its command.
The only case found in New York State, People v. Whitlock (183 App. Div. 482) furnishes only information as to what did not constitute a sufficient foundation. In that case, the dog, Graf Hausy of the Palisade was registered as a pedigreed German police dog, whose maternal grandfather was the claimed champion of Germany in 1909. However, the record showed that the dog was used mostly for exhibition at dog shows and was shown to have remarkable ability in trailing his master and members of the family and in finding articles hidden by them, but was not trained to follow the trail of strangers and in fact, did not appear to have had any actual experience in trailing strangers. In addition, the dog was not put on the trail until 5 days after the alleged crime; there had been two rainstorms in the interval and the trail followed had been crossed by many persons before the dog was placed thereon.
An examination of scores of cases in other jurisdictions suggests that the following minimum requirements are necessary to satisfy the preliminary proof to permit the court to allow a jury to pass upon this testimony as a circumstance tending to connect the defendants with the crime:
1. That the dog or dogs used are of pure blood, and of a stock characterized by acuteness of scent and power of discrimination. (State v. McLeod, 196 N. C. 542; Pedigo v. Commonwealth, 103 Ky. 41; State v. Steely, 327 Mo. 16.) In this case, the prosecution has introduced the registration of Colonel of Bedstone and the pedigree and these exhibits are certified copies of the records of the American Kennel Club. (Cf. State v. Harrison, 149 La. 83.)
2. That the dog or dogs possessed these qualities and have been accustomed and trained to pursue the human track. (Moore v. State, 26 Ala. App. 607; Slate v. McLeod, supra; Pedigo v. Commonwealth, supra; State v. Harrison, 149 La. 83.)
In this case, Trooper Suffolk detailed the training of both Colonel of Bedstone and Corporal of Bedstone, a blood brother on practice trails under various conditions and circumstances.
*728 3. That the dog or dogs have been found by experience in actual cases to be reliable in such tracking. (State v. McLeod, supra; Pedigo v. Commonwealth, supra; State v. Steely, 327 Mo. 16; Harris v. State, 143 Miss. 102.)
In the instant case, the court limited the testimony as to the actual experiences of Colonel of Bedstone to the period from January 1 to the date of the alleged crime here. Trooper Suffolk testified to five cases in which Colonel of Bedstone was used during that period.
In the first, a drowning case involving a little girl, Trooper Suffolk testified a successful trail in that given a scent of the little girl, Colonel trailed to a dam but no farther, and the body was found a short distance downstream.
In the second, a burglary case in which a defendant -claimed he had an accomplice, Colonel took a scent from an automobile and the trail led to a parking lot where the defendant had been apprehended. Trooper Suffolk was of the opinion that the trailing disproved the accomplice theory.
In the third case, an abandoned car was found containing a note to the effect that the party or parties could be found in a nearby reservoir. Colonel of Bedstone was unable to pick up a trail at all from the automobile to the reservoir. Trooper Suffolk was of the opinion that there was actually no trail to follow.
In the fourth case, a prisoner escaped from a hospital. Taking a scent from the bedsheet, Colonel took the trail but was interrupted by the physical presence of certain vehicles in the parking lot. He picked up the trail again after the interruption and according to the testimony of Trooper Suffolk led them to an apartment where the prisoner had taken refuge. He was later apprehended.
In the fifth case, Colonel of Bedstone was employed to trail an escaped prisoner from Auburn. Given the scent of a bedsheet used by the prisoner, he trailed to a barn which upon being searched, the prisoner was not found therein but was later apprehended either in the same or a similar barn in the same general locality. However, during the original trailing, Trooper Suffolk came upon fresh tracks in the snow. Giving Colonel the scent of the footprints, the dog led him through a cemetery and back into the City of Auburn and to the door of a house or apartment. The male person who answered the Trooper’s knock, upon being questioned, stated that he had gone to the cemetery to visit a grave therein.
Trooper Suffolk testified that a trained dog follows the scent and if air currents move the scent, the path he follows may not coincide with the actual path of the person at the time the scent *729 was given off. He testified that weather conditions affect the duration and strength of the scent. Ideal conditions require a reasonable humidity, a lack of high winds and an absence of extreme high or low temperatures.
On cross-examination, Trooper Suffolk admitted that bloodhounds are not infallible.
4. The dog or dogs must be placed on the trail of the person at a spot where the alleged participant or participants in the crime are known to have been. (Terrell v. State, 3 Md. App. 340.)
In the particular case, the dog must be put on the trail ‘ ‘ under such circumstances and in such way as to afford substantial assurance, or permit a reasonable inference, of identification ’ ’ (State v. McLeod, 196 N. C. 542, 545, supra).
The testimony thus far establishes that the dog, Colonel of Bedstone, on April 19, 1968 began his trailing at the back door of the Cingranelli home where witnesses have already testified that the three persons in the alleged robbery left the residence. This would clearly appear to be a known and reliable point of reference.
5. The dog or dogs must have been placed upon the trail within the period of efficiency of such dog.
The prosecution must show that the dog or dogs were within the period of efficiency. (State v. Brown, 103 S. C. 437.)
The testimony of Trooper Suffolk was to the effect that the weather conditions were good on April 19, 1968. The prosecution has already introduced the weather report of the Borne Air Base nearby as to temperature, wind velocity, etc. at the hour of the trailing.
The testimony also shows that the trailing took place between 2 and 3 p.m., the alleged robbery having occurred around 11:30 a.m. the same day. This would appear to be within the normal period and condition of efficiency in tracking. (People v. Whitlock, 183 App. Div. 482, supra [5 days and two rainstorms — insufficient]; Bullock v. Commonwealth, 249 Ky. 1 [18 hours — sufficient]; Meyers v. Commonwealth, 194 Ky. 523 [7 hours — sufficient]; West v. State, 150 Ark. 555 [same night — sufficient]; Cranford v. State, 130 Ark. 101 [few hours — sufficient]; State v. McIver, 176 N. Y. 718 [few hours — sufficient].)
The motion to exclude such testimony on the basis of the preliminary examination is denied and such testimony as to the conduct and action of the dog on April 19,1968 may be permitted to go to the jury for what it is worth. (Commonwealth v. Le Page, 352 Mass. 403.)
*730 While the testimony as to the training and pedigree and experience of the dog was given in the presence of the jury, the court heard the testimony as to the scent given the dog and the location of the beginning of the trail out of the presence of the jury in accordance with the suggestion in Buck v. State (77 Okla. Crim. 17).