ROBERTSON, Presiding Justice,-
for the Court:
Appellant, James Kirkland, was indicted in the Circuit Court of Simpson County, Mississippi, for the crime of rape of his three-year-old daughter, Erin, on December 10, 1976. A Motion for Change of Venue was sustained, and the case was transferred to the Circuit Court of Smith County. After a full trial, a guilty verdict was returned by the jury and Kirkland was sentenced to life imprisonment in the Mississippi State Penitentiary.
Appellant has assigned as error:
1. The trial court erred in overruling appellant’s motion for a directed verdict, and in refusing appellant’s requested instruction for a finding of “Not Guilty”, because
A. The State failed to prove the corpus delicti;
B. The evidence was insufficient to sustain a conviction.
2. The trial court erred in allowing hearsay testimony.
3. The trial court refused appellant compulsory process to secure the attendance of a witness.
*403 Kirkland picked up his minor daughter from her mother, from whom he was divorced. He took her with him to his place of work and worked until 2:30 p. m., when he left with his daughter and proceeded to get very drunk.
Homer Pierce testified that he saw appellant lying on the ground outside of Booth’s Store and drove him and his daughter home about 3:30 p. m. Pierce stated that when Kirkland tried to get out of the pickup truck with the little girl in his arms, he fell on top of her and she was crying when Pierce picked her up and put her on the porch. Kirkland crawled up the steps to the porch.
About 6:30 p. m. Kirkland phoned his sister, Geraldine Creason, in Braxton, and asked her to come to his house because Erin was hurt. Mrs. Creason testified that she could tell that her brother had been drinking, that she didn’t believe him, and did not go. At 9:30 that night, he called again, asked her if she was coming and again told her that the baby was hurt. Not believing him, she didn’t go.
About 8 o’clock the next morning, Margaret Garner, another sister, called Mrs. Crea-son and told her to meet her at their mother’s home where Kirkland lived. When they arrived they found that the baby had been hurt and they, together with Kirkland, took the child to the Voice of Calvary Clinic in Mendenhall. Dr. Dennis Adams hastily examined Erin and, finding that she had bruises around her left eye and on her chest, and a laceration and tear between her vagina and rectum, and suspecting possible sexual molestation, he called the University Hospital in Jackson and sent Erin there for a more thorough examination.
Dr. Carole Mangrem, a pediatric’s resident at the University Medical Center, testified that she examined Erin around noon, Saturday, December 11th, that she found some bruising on the left side of her face, a tear in the vaginal area extending toward the rectum, and “a lot of subcutaneous or under the skin bleeding and bruising in that area.” Because the little girl was sore, she didn’t make an internal examination.
Dr. Mangrem further testified:
Q And from your examination could you make any determination as to what other things could have caused this injury?
A Well, you know, there are a couple of possibilities that would come to mind. You know, first, that there was attempted sexual molestation, and the other possibility would be a straddle injury.
Q All right. Now when you talked to the defendant and when you talked to the other people there, did they make any indication that she had received a straddle injury anywhere?
A No, sir. We asked specifically if anyone had seen her fall at any time and no one knew that she had.
Q All right. And the nature of this particular straddle injury that you’re indicating — if it could be that — would that be that just a fall on the ground could cause that?
A Not likely. It would usually be on something such as a board or rail.
Dr. Mangrem stated that the little girl was friendly to her father and to others around her, that she made no physical complaints and that when asked “who had hurt her” she said “Mike”.
On cross-examination, Dr. Mangrem testified:
Q And you have seen straddle-stride or straddle:split injuries in young children three and four years old, have you not?
A Yes, sir.
Q And they are very much the same as this laceration that you saw in this child, are they not?
A Yes, sir.
Q That’s why you’re telling this Jury and this Court that in your opinion you cannot determine whether there was a straddle-stride injury or an attempted rape, can you?
A No, sir.
Q And it’s just as reasonably probable that this child suffered a straddle-stride injury as it is reasonably probable that the child was a victim of an attempted rape, is that not correct, Doctor?
*404 A From my examination.
Erin’s mother, Peggy (Kirkland) Tur-nage, arrived Saturday afternoon and was with her Saturday, Sunday and Monday. Over objection, she testified that late Saturday afternoon, when questioning Erin about what happened to her, Erin said:
A She just told me — well, she told me at first that James had hurt her. She said, “Daddy” and then she said, “No, it’s not my Daddy. James did it. James hurt me.”
Q All right. And do you know what James she was talking about?
A I just assumed when she said “Daddy” it was—
Only the witness was there when the little girl made that statement.
Over objection, Deputy Sheriff Norris Matthews of Simpson County testified that on Monday afternoon, December 13th, (after he had seen Erin on Sunday and she had said nothing), when asked “Who made your bottom sore?”, Erin said, “Daddy.” Only her mother was present. Sheriff Lloyd Jones of Simpson County testified, over objection, that when he saw Erin on Monday afternoon in the presence of her mother:
A We asked her who did this to her and she said her daddy did.
BY MR. CRAWFORD:
Q All right," sir. And what did she have reference to? Did what?
A To her face and her bottom.
Erin slept on her father’s bed Friday night, December 10th, and spots of her blood were found on the bed sheet as well as blood on her panties, which were also found on the bed. No blood of the defendant was found on the bed sheet, nor was any of Erin’s blood found on defendant’s clothes.
The Latin words “corpus delicti” mean literally, “the body of the crime”. In order to prove the corpus delicti, there are tw.o elements which must be proved beyond a reasonable doubt: One, the existence of a certain act or result forming the basis of the criminal charge; and, two, the existence of criminal agency as the cause of this act or result. Spears v. State, 92 Miss. 613, 46 So. 166 (1908); Pitts v. State, 43 Miss. 472 (1871).
29 Am.Jur.2d, Evidence, § 149, at page 182 (1967), has this to say:
“It is a well-settled principle of criminal law that a conviction for crime cannot be had unless the corpus delicti — that is, the fact that a crime has actually been perpetrated (the fact of injury or harm and the existence of some person criminally responsible therefor) — -is first established by the prosecution. In other words, the prosecution must establish the actual commission, by someone, of the particular offense charged. The accused is not required in any case to answer a charge against him in the absence of evidence upon the part of the prosecution sufficient to establish the corpus delicti; and if an accused is found guilty despite the failure of the prosecution to establish the corpus delicti, the verdict may be set aside and a new trial ordered.”
In Buford v. State, 219 Miss. 683, 69 So.2d 826 (1954), it is stated that the reason the state is required to prove the corpus delicti is to satisfy the mind that there is a real and not an imaginary crime for which the accused stands charged.
Dr. Mangrem, the only pediatric’s expert to examine Erin, testified that her injuries could have been caused either by attempted sexual molestation or a straddle-stride accident. She testified that she couldn’t determine which it was, and that one was as “reasonably probable” as the other “from her examination.”
The strictly hearsay testimony of Erin’s mother, Peggy Turnage, Sheriff Jones and Deputy Sheriff Matthews that three-year-old Erin finally” said “Daddy did it” should not have been admitted into evidence. It was not stated in the defendant’s presence.
In reversing a conviction of rape, this Court stated in Jeffries v. State, 89 Miss. 643, 42 So. 801 (1907):
“It was reversible error to admit what the assaulted girl said, the day after the *405 assault, as to who committed it, in the absence of the accused.” 89 Miss. at 647, 42 So. at 802. (Emphasis added).
This kind of pure hearsay testimony was also condemned in Simmons v. State, 105 Miss. 48, 61 So. 826 (1913); and Frost v. State, 100 Miss. 796, 57 So. 221 (1912).
In Redding v. State, 211 Miss. 855, 53 So.2d 7 (1951), this Court again stated this rule of evidence:
“[N]o statements made by the prosecutrix are admissible except her complaint that she had been ravished. The details of the transaction, the name of the party accused, the place where it is said to have occurred, the time of the alleged offense cannot be proven by a repetition of the words of the prosecutrix.” 211 Miss. at 863, 53 So.2d at 11. (Emphasis added).
Because it is just as reasonably probable, according to Dr. Mangrem, that Erin’s injuries could have been caused by a straddle-stride accident as by sexual molestation, the corpus delicti has not been proved beyond a reasonable doubt, and the conviction and sentence must be reversed. Also, because the State put on all of its evidence and this circumstantial evidence is not sufficient to convict beyond a reasonable doubt and to a moral certainty, this Court is of the opinion that not only should the conviction and sentence be reversed but also that the appellant should be discharged.
REVERSED AND APPELLANT DISCHARGED.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.