**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lonnie Carlos GATES,
Defendant-Appellant.**

No. 80–3747.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 21, 1981.

Decided March 23, 1982.

Fred Thomas, Jr., Columbus, Ohio (court-appointed), for defendant-appellant.

Richard D. Letts, Asst. U.S. Atty., Columbus, Ohio, for plaintiff-appellee.

Before EDWARDS, Chief Circuit Judge, KENNEDY, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

Defendant-appellant appeals from a jury conviction for armed bank robbery in violation of 18 U.S.C. § 2113.

On October 15, 1979, a branch of the Ohio Savings & Loan in Columbus was robbed of $20,000 by two males wearing facial coverings. One of the men remained in the lobby as a lookout man. The second, wearing sandals, a white hat, sunglasses, and a polka dot bandana over the lower portion of his face, took money from the tellers at gunpoint and ordered the manager to open the vault. The robbery occurred in the presence of the branch manager, assistant manager, three tellers, and two customers. The alarm system was triggered, and surveillance cameras took pictures of both men. Police Officer Haley responded to the alarm, drove to the bank, and pulled up within several feet of the suspects. Their facial coverings had been removed, and he was able to see their faces. The suspects took off running and were pursued by Haley on foot. As they ran, each of the two men lost a shoe; one was a sandal. The men entered a black, late-model Chrysler Cordoba with a 30-day temporary license plate taped to the rear window and sped away. A bag of money was recovered where the Cordoba had been parked. The two shoes and a discarded gun were also retrieved.

The day after the robbery a black Cordoba matching the description of the one used as the getaway car was spotted near the robbery scene. The license plate number was traced to appellant's girlfriend, Mills. The gun was traced to a man named Chubb, who testified that he had possessed it until he gave it to appellant or his brother. On January 4, 1980, Haley identified a photograph of appellant as one of the two persons he had seen running from the bank. Appellant was indicted by a federal grand jury on May 7, 1980, and charged with armed bank robbery in violation of 18 U.S.C. § 2113 and possessing a handgun while under a disability in violation of 18 U.S.C. §§ 922(h), 924(a). On June 18, 1980, a tracking dog was given the recovered sandal, which had been kept in a sealed package, to smell. It then entered a room where a lineup had been composed, walked up to appellant, and placed its head on appellant's lap.

Appellant's case went to trial on September 29, 1980. The government's case-in-chief included Officer Haley's in-court identification of appellant as one of the bank robbers:

Q. May I ask you to look around this courtroom and tell me if you see anyone in this courtroom that you recall seeing at the bank robbery on October 15th, 1979?

A. Yes, sir, I do.

Q. Would you point that individual out?

A. The gentleman sitting out behind the defense table with the blue suit.

Also adduced at trial was the testimony of Christine Mills, which placed the getaway car in appellant's possession shortly before the robbery:

Q. Do you recall what if anything you did with your black Cordoba on October 15th, 1979?

A. Do I recall what I did with it?

Q. Yes.

A. I loaned it to Lonnie.

Q. Could you speak so everybody can hear? When did you loan it to Lonnie?

A. October 15th.

Q. What time?

A. Around 9:00.

\* \* \* \* \* \*

Q. You say it was morning, afternoon or evening?

A. Morning.

The robbery happened at 10:00 a. m.

Appellant was convicted of armed bank robbery by the jury on October 1, 1980.

Appellant claims (1) that the District Court erred in admitting the tracking dog evidence in the absence of a proper foundation and (2) that the evidence was insufficient to produce a finding of guilt beyond a reasonable doubt.

■ The government cites substantial authority to support its contention that the tracking dog evidence was properly admissible under the criteria set forth in *People v. Centolella*, 61 Misc.2d 726, 305 N.Y.S.2d 460, 462–63 (Oneida County Ct. 1969) (*Centolella II*). *See also People v. Centolella*, 61 Misc.2d 723, 305 N.Y.S.2d 279 (Oneida County Ct. 1969) (*Centolella I*). *Centolella II* held that before a jury may pass on evidence of trailing by a bloodhound, it must be shown (1) that the dog is of pure blood and of a stock characterized by acuteness of scent and power of discrimination, (2) that the dog has been accustomed and trained to pursue the human track, (3) that the dog has been found by experience in actual cases to be reliable in such tracking, (4) that the dog was placed on the trail at a spot where the alleged participant or participants in the crime were known to have been, and (5) that the dog was placed on the trail within the period of his efficiency.

In this case the government argues that these criteria have substantially been met. Harrass II was a German Shepherd who received extensive training in Germany and with his American handler Preston. The dog has been on 100–150 tracking cases. He has tracked in fifteen states and qualified before in court. Preston, the dog's handler, is the owner/director of a kennel which provides 24 hour-a-day nationwide manhunting services for law enforcement agencies. Preston trained in the military and with a civilian tracker. He has been working with dogs for seven years during which time he has been on three hundred manhunts and participated in seventy-seven actual case lineups and again that many demonstrative-type lineups. Preston described his association memberships and the training procedures he employs. He has qualified in court before as Harrass II's handler. In this case, Harrass II was brought to an office building and given a sandal that had been placed in a box in a vault eight months earlier. After the dog obtained the scent from the sandal, he was led into the hallway and entered a room where a lineup had been assembled. The dog promptly went to appellant and placed his head on appellant's lap. The District Judge admitted the evidence. He also, we think properly, admonished the jury to be wary about placing too much weight on this evidence. The District Judge told the jury:

Evidence has been presented in this case that law enforcement authorities conducted portions of their investigation with the aid of a trained dog. Because it is of course not possible for the dog to communicate its findings to us directly, we must rely on the interpretation of the dog's actions provided by the testimony of its trainer, witness John Preston. Because of the nature of this evidence, you are instructed to receive it with caution and not to give it undue weight. It is to be considered as a part of, and along with, all the other evidence in the case in your deliberations.

■ We have carefully reviewed the record below and conclude that sufficient evi-

dence was presented to support the jury's finding of guilt.

We also conclude that even if the evidence supplied by Harrass II were inadmissible, there was more than enough clearly admissible evidence to support the jury verdict beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Accordingly, the judgment of the District Court is affirmed.

CORNELIA G. KENNEDY, Circuit Judge, concurring.

I respectfully disagree with that part of the majority's order which holds that the tracking dog evidence was admitted with a sufficient foundation to assure its reliability.

. This is a lineup case. No foundation was laid which would allow the trial court or a reviewing court to conclude that the use of tracking dogs in lineup identifications is reliable nor was there evidence that the lineup procedure is generally accepted as reliable by either those who train and handle dogs or law enforcement agencies. *Cf. United States v. Brady*, 595 F.2d 359 (6th Cir. 1979). A survey of reported cases reveals no cases involving lineup identifications by dogs in situations other than canine baggage sniff lineups.

In addition, an insufficient foundation was laid with respect to Preston and Harrass II's training, experience and results in tracking dog lineups. It is necessary to distinguish Preston's experience with dogs in general with his experience with Harrass II. Although the record reveals Preston's experience with respect to actual case lineups and demonstrative-type lineups, there is no evidence that Harrass II had previous actual case lineup experience. Harrass II practiced scent discrimination an unspecified number of times by smelling a single person and then identifying an object belonging to him from an array of other inanimate objects laying in front of him. The scent identification training described by Preston represents an identification situation that is not identical with that employed in appellant's scent identification lineup where several persons were present.

For the above-mentioned reasons there was an insufficient foundation laid to insure the reliability of the evidence. I concur with the result reached by the majority, however, since a review of the record reveals that the inclusion of this evidence was harmless in light of the overwhelming evidence of appellant's guilt.